MANUFACTURING COMPANY v. SUMMERS.

(Filed November 21, 1906).

*Fraud—Right to Follow Property—Money—Choses in Action—Injunction Pendente Lite—Negotiable Instruments —Cashiers' Checks—Negotiabilily—Holder in Due Course—Demand Paper—Negotiation Within Reasonable Time—Consideration—Pre-existing Debt—Burden of Proof.*

1. When a man's property has been obtained from him by actionable fraud or covin, the owner can follow and recover it from the wrong-doer as long as he can identify or trace it; and the right attaches, not only to the wrong-doer himself, but to any one to whom the property has been transferred otherwise than in good faith and for valuable consideration; and this applies not only to specific property, but to money and choses in action.

2. Where the verdict of the jury establishes the right of the plaintiff to a fund in bank as against one of the defendants, who is insolvent and has attempted to misappropriate it, the payment of a cashier's check covering said fund, which he has endorsed to the other defendant, who is a non-resident, will be restrained until the rights of the parties are finally determined.

MANUFACTURING CO. *v.* SUMMERS.

3. Under the Negotiable Instruments Statute (Rev., ch. 54, secs. 2335-6) cashiers' checks, whether certified or otherwise, are classed with bills of exchange payable on demand; and if negotiated by endorsement for value without notice and within a reasonable time, a holder can maintain the position of a holder in due course.

4. Under Rev., sec. 2201, "a holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was ·the fact; (3) that he took it in good faith and for value; (4) that at the time it ·was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

5. Under Rev., sec. 2202, which provides that where an instrument, payable on demand, is negotiated an unreasonable time after its issue, the holder is not deemed a holder in due course, and section 2343, which provides that in determining what is a reasonable or unreasonable time, regard is to be had to the nature of the instrument and the facts of the particular case, where a party obtained a cashier's check for $1,824 from a bank in the State and negotiated the same to a party residing in Virginia in five days thereafter, such negotiation was within a reasonable time.

6. Under Rev., sec. 2173, which enacts "that an antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time," such an indebtedness is sufficient consideration to constitute one a holder for value within the meaning of the law merchant.

7. Where the evidence and verdict established that the title. of the party who negotiated the check to defendant was defective, the burden under Rev., sec. 2208, was on the defendant claiming to be a purchaser in good faith for value and without notice, to make this claim good by the greater weight of the evidence; and the Court erred in charging that the burden was upon the plaintiff to prove that the defendant was not a holder in due course.

ACTION by Singer Manufacturing Company against G. A. Summers, F. D. Fuller and the City National Bank of Greensboro, heard by *Judge G. S. Ferguson* and a jury, at the June Term, 1906, of the Superior Court of GUILFORD.

From the facts, as stated in the record, it appears than on 17 May, 1904, G. A. Summers, then acting as agent of the

plaintiff company, deposited in the City National Bank of Greensboro a sum of money belonging to the plaintiff company amounting to $1,396.89. That this deposit was made in his own name, and on 18 May, 1904, the said Summers, adding other money to this, obtained a cashier's check from the defendant bank for the sum of $1,824; and that this was done by Summers with intent to embezzle and misappropriate the plaintiff's money so deposited.

That on 23 May, 1904, the plaintiff endorsed this check to F. D. Fuller, residing in Sylvatus, Va., the consideration claimed being a debt of $328 then due by Summers to Fuller, the remainder of the purchase-money being paid in cash.

There were circumstances from which the plaintiff claimed that the purchase of this check on the part of Fuller was neither in good faith nor for value.

The defendant denied the fraud, claiming that the check was negotiated in good faith, and the defendant Fuller was a holder of the same in due course.

There were facts which showed that Summers was insolvent and that Fuller resided in the State of Virginia.

The cause was submitted to the jury on the following issues:

1. Did the defendant Summers embezzle and fraudulently misappropriate $1,396.89 of the moneys of the plaintiff company and fraudulently use the same in the purchase of a cashier's check of 18 May, 1904, issued by the National Bank of Greensboro at $1,824?

2. Did the defendant F. D. Fuller, at the time he took the check, have knowledge of that fraud, and take the check in bad faith?

At the request of the defendant, the Court, among other things, on the second issue, charged the jury as follows:

"The burden of proof is upon the plaintiff to show that Fuller had knowledge of the fraud alleged, and took the check

in bad faith or without value; and if the plaintiff fails to satisfy the jury by the greater weight of evidence, they should find the issue in favor of the defendant Fuller, and answer the issue 'No.' "

The Court, in the body of the charge, in substance repeated this position, and the plaintiff excepted.

The jury, under the charge of the Court, and on the testimony, answered the first issue "Yes" and the second issue "No."

On the verdict there was judgment for the defendant, and plaintiff excepted and appealed.

*King & Kimball* for the plaintiff.
*John A. Barringer* and *W. P. Bynum, Jr.*, for the defendant.

HOKE, J., after stating the case: It is well established that when a man's property has been obtained from him by actionable fraud or covin, the owner can follow and recover it from the wrong-doer as long as he can identify or trace it; and the right attaches, not only as to the wrong-doer himself, but to any one to whom the property has been transferred otherwise than in good faith and for valuable consideration. *Edwards v. Culberson,* 111 N. C., 342, citing Pomeroy's Eq. Jurisprudence, as follows: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, * * * or through any other circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity imposes a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer or in the hands of any subsequent holder, until a purchaser in good faith and

without notice acquires a higher right and takes the property relieved from the trust." See also, *Wilson v. Scott,* 3 Lans. (N. Y.), 308. The principle applies, not only to specific property, but to money and choses in action.

It is said by *Lord Mansfield* in the case of *Clark v. Shee and another,* First Cowper's Reports, p. 200: "Where money or notes are paid *bona fide* upon a valuable consideration, they shall never be brought back by the true owner; but where they come *mala fide* into a person's hands, they are in the nature of specific property, and if their identity can be traced and ascertained the party has the right to recover."

And as said by *Andrews, Judge,* in *Newton v. Porter,* 69 N. Y., 133: "It is immaterial in what way the change has been made—whether money has been laid out in land or land laid out in money, or how the legal title to the converted property may be placed—equity only stops the pursuit when the means of ascertainment fail or the rights of *bona fide* purchasers for value, without notice of the trust, have intervened. The relief will be moulded and adapted to the circumstances of the cases so as to protect the rights of the true owner."

This case is an apposite authority in support of the principle as applied to the facts of the case before us.

The verdict of the jury having established a clear right in the plaintiff against the defendant Summers, we think that upon this finding and the other facts of the case it is equally clear that the payment of the check should be restrained until the rights of the parties are finally determined. The facts show that Summers is insolvent and Fuller a non-resident of the State. Pomeroy's Eq. Rem., vol. 1, sec. 365; *Parker v. Grammer,* 62 N. C., 28; *McCless v. Meekins,* 117 N. C., 34.

In *Parker v. Grammer* it is held: "Where there is reason to apprehend that the subject of the controversy in equity will be destroyed, or removed, or otherwise disposed of by the

defendant pending the suit, so that the complainant may lose the fruit of his recovery, or be hindered or delayed in obtaining it, the Court, in aid of the primary equity, will secure the fund by the writ of sequestration and injunction, until the main equity is adjudicated at the hearing of the cause." And this principle is now embodied in our statute on the subject. Revisal 1905, sec. 806.

The property in controversy being represented by a cashier's check, a negotiable instrument, the rights of the plaintiff and defendant will largely depend upon our statute on negotiable instruments, Rev. 1905, vol 1, ch. 54. Under this statute these checks, whether certified or otherwise, are classed with bills of exchange payable on demand; and if negotiated by endorsement for value without notice, and within a reasonable time, a holder can maintain the position of a holder in due course. Ch. 54, Revisal 1905, secs. 2335 and 2336.

As pertinent to this inquiry, secs. 2201 and 2202 of this chapter are as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Sec. 2201.

"Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course." Sec. 2202.

And sec. 2343 of the same chapter provides that in determining what is a reasonable or unreasonable time regard is to be had to the nature of the instrument and the facts of the particular case.

What constitutes reasonable time will vary under the facts and circumstances of different cases, and this statute expresses as definite a rule as could well be established or considered desirable.

On the facts of this case we think, and so hold, that so far as time is concerned, this negotiation was undoubtedly within a reasonable time.

Again, it will be noted that the defendant Fuller, according to the claim made by him, purchased and paid for this check partly in a pre-existing debt due from Summers to himself.

Many of the courts have heretofore denied that such an indebtedness was sufficient consideration to constitute one a holder for value within the meaning of the law merchant. Our statute on this question, however, sec. 2173, enacts "that an antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

If defendant's statement is accepted, no objection can be made, therefore, to the consideration because same was in part a pre-existing debt, this being declared sufficient by the express terms of the statute.

We think, however, there was error in the charge of his Honor on the second issue, as to the burden of proof, which entitles the plaintiff to a new trial.

This issue is not very well framed to present the question as to whether defendant Fuller was a holder in due course. It would seem to be desirable that the issue should be drawn so as to present the question affirmatively and in more precise terms:

"Was defendant Fuller a purchaser of the check in good faith for valuable consideration and without notice of any infirmity in the instrument or defect in the title of Summers?"

But, in whatever form presented, the burden of the issue is not on the plaintiff, as stated by the Court, but on the defendant.

By sec. 2208 of said ch. 54 it is enacted: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

The evidence and the verdict on the first issue established that the title of defendant Summers, who negotiated the check to defendant Fuller, was defective.

This having been established, the burden was on the defendant.claiming to be a purchaser in good faith for value and without notice to make this claim good by the greater weight of the evidence.

The statute, in this respect, only enacts the law as it has always existed, which puts the burden in such case on the person claiming to be a holder in due course. *Bank v. Burgwyn,* 108 N. C., 62; Eaton & Gilbert Commercial Paper, p. 393.

For this error in the charge there will be a new trial on the second issue, and it is so ordered.

New Trial.