In re A. O. BROWN & CO.

Ex parte PARKER.

(District Court, S. D. New York. April 4, 1911.)

1. SALES (§ 316*)—RIGHT OF SELLER TO RESCIND—INSOLVENCY OF BUYER—PAYMENT BY CHECK.

Where on a delivery of property a check is given in payment, and the drawer, drawee, and payee all live in the same city, so that it may be presented at once, in the absence of an agreement or understanding to the contrary, the drawer must be held to represent that the drawee is already in funds to meet it, and, if not, the payee may rescind the sale and reclaim the property.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 890–895; Dec. Dig. § 316.*]

2. BANKRUPTCY (§ 140*)—BROKERS—RIGHT OF CUSTOMER TO RECLAIM STOCK.

Claimant directed bankrupts, who were brokers, through a branch office, to sell certain stocks, which the bankrupts did, delivering stock of their own and receiving payment therefor. On being advised of the sale, claimant delivered her stock to the manager of the branch office, and received from him a check in payment therefor. There were no funds in the drawee bank to meet the check at the time it was drawn. The bankrupts' insolvency followed, and it was not paid. *Held*, that claimant had the right to recover the proceeds of her stock from the bankrupts' trustee, if they had not been dissipated, and, if they had been, she had the right to rescind the delivery and reclaim her stock, subject, however, to the right of the trustee to retain it by paying her the amount for which it was sold, and that it was therefore practically immaterial whether or not the bankrupts had converted the proceeds.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In the matter of A. O. Brown & Co., bankrupts. Ex parte Bessie H. Parker. Order in favor of claimant.

See, also, 189 Fed. 432.

Ralph Wolf, for trustee.

Henry L. Sprague, for claimant.

HAND, District Judge. [1] It now appears that when Becker gave the check to Mrs. Parker, there were no funds in his account. The question is what Becker's representation really was, and what Mrs. Parker had the right to believe was involved in giving her a check at all. If the natural meaning of the transaction was that there was money there at that time subject to withdrawal by the check, then she may rescind, for confessedly that representation was untrue. If, on the other hand, the representation is only a promise that there will at some future time—that is, when she chooses to present the check, be funds to meet it—then there is no misrepresentation of fact unless Becker at the time did not intend to put the drawee in funds, before the check should be presented, of which there is no evidence.

Now a check is undoubtedly a draft, and, in the case of a time draft, I suppose no one would say that there was any representation by the drawer that the drawee was in funds in præsenti. Every one knows that business usage does not contemplate that the drawee shall be in

funds until the draft is due. The trustee makes a plausible argument, through what he says is the common custom among brokers in meeting out of town checks upon their branch offices. He says that it is customary for the branch house to wire the New York house that a check has been delivered, and for the broker to put the drawee bank in funds by wire before the check goes through the clearing house. It is doubtless the custom to deposit checks and so to take 24 hours to cash them, and, if that were a part of the engagement so that the check could not be presented for payment except at the end of 24 hours, then the check would properly be held to be a time draft; and, though the time would be short, it would be also quite proper to hold that to give the check was no more than a representation that at the end of the 24 hours the drawee would be in funds. Were that the fact, it would be impossible to show fraud or a misrepresentation of fact without showing that the drawer did not intend to put the drawee in funds when he uttered the check. However, though it is the usual custom to deposit checks. it is by no means the inevitable custom, nor is there anything implied in the transaction to prevent the payee from going at once to the drawee's paying teller and demanding payment in cash, or requiring a certification. Unless there is some agreement to the contrary, this right of the payee gives him immediate control over the funds in the drawee's hands, and he certainly has the right to assume that the drawee will be in funds when he appears, and that the drawer so means to represent.

In short, the period of the time of presentation of a check is by no means one day, but it is the earliest time within which the check may be presented. and that, of course, varies with the facts. In a case like that at bar, where the drawer, the payee, and the drawee all live in the same city, and where the payee may cash the check in a few minutes, the time is reduced practically to nothing, and it seems to me that the drawer must be held to represent that the drawee is already in funds, unless he indicates in some way that the check is not to be presented at once. It is of no consequence that the payee may wait and so take a chance of the drawer's and the drawee's continued solvency. If the check means that the drawee is in funds now, and if the payee accepts it as cash, he may rescind if he was misled, however innocently.

The authorities are not helpful upon this precise proposition. I have found no case in which the point was taken that there were no funds in the drawee's hands at the time the check was given, except cases in which there was in addition clear proof of fraud, such as Earl of Bristol v. Wilsmore, 1 B. & C. 514; Keable v. Paine, 8 A. & E. 555. In the other cases the rule seems to be confused with the rule which exists in many jurisdictions that delivery by a seller upon a cash sale is not of itself a waiver of the condition of payment. I believe that this rule is quite wrong in principle (Williston on Sales, § 346); nor is there any authority binding upon me. At least such a delivery must be held to be presumptive evidence of waiver and this appears to be the rule in New York. Osborn v. Gantz, 60 N. Y. 540. That question, however, in the light of the present facts is immaterial.

[2] The last question is as to whether the failure to prove the dissipation of the proceeds changes the claimant's rights. Whether the proceeds are traceable or not, the trustee still has the right to keep this stock, even though acquired by fraud, if he will pay the proceeds, or the amount of the proceeds, for which it was sold. This right he has in spite of the fact that the claimant's assent to a delivery was procured by fraud, because her assent was not necessary to the brokers' right to demand the stock at any time upon tender of the proceeds. He therefore, even after the delivery is rescinded, retains the right which the brokers had to retain the stock upon that condition.

Coming back now to the failure to prove that the proceeds have been dissipated, it is apparent that this makes no difference in the result, because, if they are not dissipated, the claimant is confined to the proceeds, while, if they are, yet the trustee may still retain the stock upon paying to her the equivalent. How, then, can the trustee complain of a failure to prove that he has not got the proceeds? If he has them, he must pay them over but he may keep the stock. If he has not got them, he may pay over their equivalent and keep the stock. The only change in his position is that, if she had proved that he did have the proceeds, he would have had to pay them, whether or not the value of the stock had fallen. That, however, is her right, not his. Her failure to prove that only eliminates her right to insist on the proceeds. If he is given the option to pay either amount of the proceeds or stock, which option he has even if the proceeds themselves be gone, he is in no worse position than if he had the proceeds. Therefore, if an order be entered giving him that option, the issue of whether or not the proceeds are dissipated becomes immaterial.

What I said in the earlier opinion was correct enough, and would result strictly in compelling the claimant to show that she could not get the actual proceeds. Since, however, the amount of the proceeds is the precise equivalent of the actual proceeds, it seems to me of no consequence to require proof of a matter, which, while formally necessary, makes not the slightest substantial difference in result. As it does not concern any one whether the claimant traces and gets the actual proceeds, or gets the equivalent sum of money by way of tender from the trustee, I shall not require any proof upon the subject. I had not carried out the detail of this reasoning before, as it was not necessary, while there was no misrepresentation, and while so far as appeared the claimant upon delivering the stock had accepted the broker's credit.

Let an order pass directing the trustee at his option to turn over either the certificate or the amount of the proceeds at which the stock sold.