## BANK OF NORTH AMERICA et al. v. PENNSYLVANIA OIL RE-FINING CO.

### (District Court, E. D. Pennsylvania. 1914.)

### No. 947.

CORPORATIONS (§ 565*)—INSOLVENCY—CREDITOR OR STOCKHOLDER.

Claimant purchased preferred stock in defendant company on misrepresentations of value made by F., being further induced to buy by promises of large dividends, high-salaried employment, and a block of common stock, for which he paid nothing. Whether the money paid by claimant was paid to the company or to F. did not clearly appear, and he proclaimed his status as a stockholder up to and subsequent to the time of the appointment of a receiver for the company. *Held*, that he was not then entitled to rescind because of the fraud and to be regarded as a creditor instead of a stockholder.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2281, 2282; Dec. Dig. § 565.*]

In Equity. Suit by the Bank of North America and others against the Pennsylvania Oil Refining Company, otherwise called the Petroleum Products Company. On exceptions to the report of an auditor, finding that exceptant was a stockholder and not a creditor of defendant company. Exceptions dismissed, and report confirmed.

J. Addison Abrams, of Philadelphia, Pa., for exceptants. Junkin & Newbourg, of Philadelphia, Pa., opposed.

DICKINSON, District Judge. The Pennsylvania Oil Company, the defendant, was placed in the hands of receivers October 30, 1912, for the purposes of liquidation. Aside from the claim of exceptant, the assets were about sufficient to meet the total indebtedness. The exceptant is either a stockholder or a creditor. If he cannot participate in the distribution as a creditor, he gets nothing. If he can, the creditors get a dividend, not payment of their claims. The auditor excluded the exceptant from the creditor class. To this finding he has filed 14 exceptions, of which 11 are to specific findings of fact, one is to a conclusion drawn from the facts as found, and the two remaining exceptions are to the refusal of the auditor to do what, under his findings of facts, he clearly could not have done. The whole complaint of the exceptant against the auditor is therefore aimed at the view the latter has taken of the facts.

The real case of the plaintiff is one which is only too common. Lured by the thought of large gains or overborne by some persuasive personality, men and women are every day exchanging good money for

worthless pieces of paper in the form of stock certificates. The ventures into which the money goes run the gamut from the most impudent and barefaced frauds to business efforts which have failed without the fault of any one. The methods by which the investor is separated from his money are, of course, as varied as the display of human ingenuity makes possible. Ordinarily no great degree of ingenuity is required. The glare of large profits so blinds the eyes that nothing else can be seen. The victim usually does not know the means by which he was defrauded. Not infrequently the mere show of the Eldorado was enough.

In determining the legal rights of the victim and the legal remedies of which he may avail himself, a broad inquiry is necessary. Assuming, as is commonly the case, that a part of the machinery was a corporation, was the fraud participated in by the corporation, or was it confined to independent individuals? In illustration of this distinction, let us suppose two cases. In one the victims are induced to subscribe to the stock of the corporation and pay their money into its treasury. The fraud is committed by those for whom the corporation is responsible. In the other, an individual is possessed of stock in a corporation but not otherwise identified with it. The victims are induced to buy this stock by its then individual owner. The legal distinction between these two cases and the result that because of this the legal remedies are different is obvious. Sometimes, however, often indeed, the distinction is lost sight of or purposely obscured so that no human investigation can disclose what was done beyond the ultimate fact that the money of the victim has gone somewhere. The rights of creditors and innocent stockholders soon come to be intermingled with those of the complaining victim, and this fact may limit the remedies which he might otherwise successfully invoke.

These general observations have a direct bearing on the present case. The exceptant plants himself on the legal proposition that, if fraudulently induced to enter into a contract, he may on discovery rescind, offer to restore, and demand back any money paid. As a statement of a general principle of law, this may be conceded, but it has its limitations and exceptions. The case for the exceptant stands, therefore, upon the averments of fact that he was defrauded; that the corporation is answerable for the consequences of the fraud; that he rescinded; and that the recession was made so promptly that no rights or equities of other parties have been interposed between him and the return of his money out of the proceeds of sale of the assets of the company. In his way stands the findings of fact by the auditor against him. Ordinarily it would be a sufficient disposition of this case to stand by the rule which is invoked against the exceptant that findings of fact by an auditor or other trier of facts will not be disturbed. The findings of the auditor are moreover vindicated and well supported by the reasons given by him in his clear and convincing report.

The inducement to this exceptant was the expectation of receiving $2 for every dollar invested, and his profits further increased by large dividends and a fat salaried employment. The common stock he was to get for nothing. That he could have thought the common stock

represented actual cash paid in is unbelievable. If he was subscribing for this stock and getting the original stock issue, he knew the common stock was so-called bonus stock. The bait which lured him was dangled by Fleming. If he was buying the stock of Fleming, he knew the common stock had no basis of value other than the business prospects of the company. Whether the money the exceptant paid for his stock was paid to the corporation or to Fleming in purchase of his stock is not clear. It is spoken of in such a way as that either might be the fact. Whether the exceptant had ever any definite thought of rescinding his contract of subscription, if it was one, is doubtful. That he did not in fact rescind is almost certain. On the face of things, at least he was a stockholder. He himself proclaimed his status as a stockholder beyond the time of the appointment of the receiver. The fact that he was defrauded, the fact that he rescinded, and the further fact that the rights of other innocent parties have intervened between him and the recovery of his money are all found against him by the auditor, and no justification for the court to interfere with these findings is shown. There is no finding in his favor of any fact which makes clear that the claim of the exceptant is not wholly against Fleming. The refusal of the auditor to find the exceptant to be a creditor of the corporation and his further refusal to withhold distribution awaiting the result of the action for deceit brought by the exceptant are both upheld.

The exceptions are accordingly dismissed, and the report of the auditor confirmed.