SMATHERS v. TOXAWAY HOTEL COMPANY.*

(Filed 13 January, 1915.)

1. **Bills and Notes—Due Course—Presumptions—Interpretation of Statutes.**
     One who acquires a negotiable instrument, regular upon its face, for
     value before maturity, is *prima facie* taken to be a holder in due course,
     nothing else appearing. Revisal, sec. 2201.

2. **Bills and Notes—Infirmities in Instrument—Holder—Burden of Proof—
   Notice—Bad Faith—Interpretation of Statutes.**
     When it is alleged and shown in an action upon a note brought by the
     holder, claiming to have acquired it in due course, that the instrument
     had been procured by fraud between the original parties, the burden is
     then upon him to show that he had acquired it *bona fide*, without notice
     of any infirmity in the instrument or defect in the title of·the person who
     negotiated it to him (Revisal, sec. 2206), the notice required to invalidate
     his title being "actual knowledge of the infirmity or defect, or knowledge
     of such facts that his action in taking the instrument amounted to bad
     faith." Revisal, sec. 2205.

3. **Same—Instructions—Trials—Questions for Jury.**
     Where fraud between the original parties to a negotiable instrument
     has been alleged and shown. and one claiming to be a holder in due course
     brings his action thereon, it is not error for the trial judge to refuse to
     instruct the jury, when the plaintiff's evidence, uncontradicted, tends to
     show that he acquired it in due course without knowledge or notice of the
     defect, that there was no evidence of such knowledge or implicative facts,
     for the statute casts the burden, in such instances, on the plaintiff, and
     the jury, the triers of the facts, may not find them to be as testified; but
     the plaintiff is entitled to an instruction that the jury should answer the
     issue in his favor if they find the facts to be as testified, when, as in this
     case, no adverse inferences may be drawn from the testimony.

4. **Bills and Notes—Collateral Notes—Value—Pre-existing Debt.**
     Notes taken as collateral for a valid preëxisting debt are acquired for
     value within the meaning of the negotiable instrument law.

APPEAL by Frank & Co., intervenors, from *Harding, J.,* at February
Term, 1914, of BUNCOMBE.

*W. R. Whitson and J. C. Martin for plaintiff.*
*Bourne, Parker & Morrison and T. F. Davidson for intervenors.*

WALKER, J.   There are several of the exceptions in this record which
are common to both this appeal and that of McMichael, which make it
necessary to discuss only the assignment of error relating to the question,
whether the court should have given the instruction requested by the
intervenors, Frank & Co., that if the jury believe the evidence, they will
find that they are innocent purchasers for value and without notice of

---

*See *Smathers v. Toxaway Hotel Company,* 167 N. C., 469.

any fraud in the transaction connected therewith, or, in other words, that they are holders in due course, notwithstanding any infirmity in the instruments or any defect in the title of the person who negotiated them. There can be no doubt that Frank & Co. acquired their title to the instruments by indorsement before they were due, and that each of them was, all that time, complete and regular on its face and had not been previously dishonored, so that the only requisite to an unimpeachable title to the notes, under Revisal, ch. 54, sec. 2201, is that, at the time they were negotiated, Frank & Co. had no notice of "any infirmity in the instruments or any defect in the title of the person who negotiated them." Revisal, sec. 2208, provides, in part, that every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person, who has negotiated the instrument, was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title in due course. The intervenors started out with *prima facie* evidence that they were holders in due course, but when it was found that the notes had been executed in fraud of creditors, the burden shifted to them and they were bound to prove that they acquired the title as holders in due course, or from some person who held the notes as such. It has been held to be insufficient to show merely that the holder purchased the note before its maturity and paid value for it; but to entitle him to recover upon it, under Revisal, sec. 2206, as a holder in due course, he must go further and show that he acquired it *bona fide* and without notice of any infirmity in the instrument or defect in the title of the person who negotiated it to him. In order to constitute such notice, it is further provided by Revisal, sec. 2205, that the holder, claiming the right of recovery upon it, "must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Norton on Bills and Notes, 334, speaking of the burden of proof when there is an infirmity in the note or a defect in the title, says: "The burden is cast upon the plaintiff to show that he took the paper for value and in good faith. Some of the cases declare that the holder need not show that he had lack of notice, but need only show value, because the burden of showing notice is upon the party who seeks to impeach the title. But the other courts maintain, and properly, that in addition to proving value the holder should prove that he bought the note in good faith, and should show that he had no knowledge of or notice of the fraud. If value and notice are disputed as facts, they must be passed upon by the jury." So in *Tatam v. Haslar,* 23 Q. B. Div. (1889), p. 345, the Court says: "When fraud is shown, the burden of proof is on the holder to prove both that value has been given and that it has been given in good faith, without notice of the fraud." And in *Vosburgh v.*

*Diefendorf,* 119 N. Y., 357: "Where the maker of negotiable paper shows that it has been obtained from him by fraud, a subsequent transferee must, before he is entitled to recover thereon, show that he is a *bona fide* purchaser or that he derived his title from such a purchaser. It is not sufficient to show simply that he purchased before maturity and paid value; he must show that he had no knowledge or notice of the fraud." See, also, *Giberson v. Jolly,* 120 Ind., 301; *National Bank v. Diefendorf,* 123 N. Y., 191. The above cases are cited with approval in *Bank v. Fountain,* 148 N. C., 590, and are fairly illustrative of the prevailing doctrine. See, also, *Cox v. Wall,* 132 N. C., 730; *Morgan v. Bostic, ibid.,* 743; *Bank v. Hollingsworth,* 135 N. C., 556, 582; *Crockett v. Bray,* 151 N. C., 615, 619. The question now arises whether Frank & Co. had actual knowledge of the fraud, or of any such facts as constituted bad faith in taking the notes. With respect to this feature of the case, they asked the court to instruct the jury that there was no evidence of any such knowledge or implicative facts. But it would have been error, upon the evidence as it now appears, for the judge to have so charged. There being an infirmity in the notes, and the hotel company not having a good title to them, as it participated in the fraud, and was the principal offender, the burden was cast upon Frank & Co. to prove that they had acquired them without the guilty knowledge, and they were not entitled to such a peremptory instruction. It must be a very plain and conclusive case to justify such an instruction in favor of the party having the burden of proof, as the credibility of the evidence adduced in support of his claim that he is a holder in due course is for the jury to decide. If they do not believe the evidence, he has failed to discharge the burden resting upon him by the terms of the statute, and the verdict should therefore be against him, unless there is other evidence or circumstances sufficient for that purpose, and whether there is, the jury at last must also decide. But the intervenors, Frank & Co., were entitled to the other instruction, which was based upon the credibility of the evidence, and permitted the jury to pass upon it. Even when there is an infirmity in the instrument or defect in the title thereto, if the holder makes a full and fair disclosure of the facts and in no reasonable view of the evidence does it appear that he had the guilty knowledge described in the statute, and there is no circumstance, or other evidence in the case, contradicting it, or from which an adverse inference might be drawn, such an instruction as that requested should be given. We so held in *Bank v. Fountain,* 148 N. C., 590, where it was said by *Justice Hoke,* when dealing with a like question: "The fraud having been established or having been alleged, and evidence offered to sustain it, the circumstances and *bona fides* of plaintiff's purchase were the material questions in the controversy; and both the issue and the

credibility of the evidence offered tending to establish the position of either party in reference to it was for the jury and not for the court," citing *S. v. Hill,* 141 N. C., 771; *S. v. Riley,* 113 N. C., 651. Again it is said: "As heretofore stated, when fraud is proved or there is evidence tending to establish it, the burden is on the plaintiff to show that he is a *bona fide* purchaser for value, before maturity and without notice, and the evidence must be considered as affected by that burden. If, when all the facts attendant upon the transaction are shown, there is no fair or reasonable inference to the contrary permissible, the judge could charge the jury, if they believed the evidence, to find for the plaintiff, the burden in such case having been clearly rebutted. But the issue itself and the credibility of material evidence relevant to the inquiry is for the jury, and it constitutes reversible error for the court to decide the question and withdraw its consideration from the jury." The Court there adverts to the unsoundness of the rule, as stated in Daniel on Neg. Instr., sec. 819, as to the burden of proof, and says it is not in accordance with our enactment upon the subject.

It would be useless to prolong the discussion of the law applicable to cases of this kind, as it is fully set forth in *Bank v. Fountain, supra,* with proper reference to the authorities, which case has been later and frequently approved by this Court. *Mfg. Co. v. Summers,* 143 N. C., 102; *Bank v. Griffin,* 153 N. C., 72; *Myers v. Petty, ibid.,* 462; *Park v. Exum,* 156 N. C., 228. The case of *Bank v. Griffin, supra,* is clearly in point, and shows that the intervenors were entitled to have the jury instructed as they requested, provided the state of the evidence warranted it, and we think it did. It tended to show, if believed, that Frank & Co. took the notes as collaterals for a preëxisting and *bona fide* indebtedness of the Toxaway Hotel Company to them for a larger amount, which, of course, is a valuable consideration. Revisal, secs. 2173, 2175; *Brooks v. Sullivan,* 129 N. C., 190; *Mfg. Co. v. Summers,* 143 N. C., 102. Frank & Co. were then holders for value. Did they buy in good faith and without notice of the plaintiff's equity, or of any infirmity in the instruments, or of any defect in their indorser's title thereto? E. W. Frank positively testifies that they did, and gives in detail all the circumstances connected with the transfer of the notes, in an apparently full, fair and candid manner and without any noticeable concealment or suppression of the facts. If he told the truth, the conclusion is inevitable that they bought for value and without notice of any infirmity or defect, and also in good faith. The only remaining inquiry, therefore, is, Did he tell the truth? And the court should have left that question to the jury, with instructions as to the evidence and *quantum* of proof, and as to such other matters as would be pertinent and proper for them to consider, upon these questions of value, notice,

and the burden of proof. Norton on Bills and Notes, pp. 318, 319, states the rule with substantial accuracy, and which we adopt with slight qualification, to be noted hereafter. After showing (at pp. 292, 310, and 311) that where an infirmity or defect has been shown, the burden is upon the holder (whether plaintiff or defendant or intervenor) to prove that he holds *bona fide,* for value and without notice, he says: "The reason for this rule is that where there is fraud it is but reasonable to suppose that he who is guilty of it will part with the instrument for the purpose of enabling some third party to recover upon it. Such presumption operates against the holder and devolves upon him the duty of showing value and lack of notice in rebuttal of the duress or fraud, in order to maintain his action. In the cases of illegality the rule is the same, and for the same reason. The burden is cast upon the plaintiff to show that he took the paper for value and in good faith. Some of the cases declare that the holder need not show he had lack of notice, but need only show value, because the burden of showing notice is upon the party who seeks to impeach the title. But the other courts maintain, and properly, that, in addition to proving value, the holder should prove that he bought the note in good faith, and should show that he had no knowledge or notice of the fraud. He should show, also, that he paid value for the note; and if value and notice are disputed as facts, they must be passed upon by the jury. Hence it follows that it is not necessary for the defendant, as in case of lack or failure of consideration, to show that the plaintiff did not pay value or that he had notice of the facts of the defense, but these facts must appear affirmatively on the plaintiff's (holder's) part. It is probable that this rule does not mean that the plaintiff (holder) must prove a direct negative, but that, as a part of the direct case, he must show the facts of the transaction constituting the transfer, and then, if there is nothing in the transaction itself to show bad faith, and there is no proof from other sources of want of good faith, or actual or constructive notice of the defense, the plaintiff (or holder) must prevail," provided, as we will add, the jury believe the evidence; for, as the "burden of proof," under the statute, is upon the holder, intervenor in this case, when the "infirmity in the instrument or defect in the title" is shown, if he fails to satisfy the jury of his being a holder in due course, the burden has not been discharged by him, but still remains. A *prima facie* case is made out by him, in the beginning, when he produces the note, proves its execution and its indorsement to him (*Bank v. Fountain* and *Tyson v. Joyner, supra*), but this *prima facie* case vanishes when the infirmity in the instrument or defect in the title appears. It is not transferred to the maker of the note, for he stands in a better position by the express terms of the statute, which casts the *burden of proof* upon the holder to show that he is an innocent

purchaser for value. The instruction, therefore, should have been given in response to the intervenor's prayer therefor. It may also be remarked that the charge seems to have been based upon the rule of *Lord Tenterden,* instead of that of *Lord Denman,* which has been written into our statute, Revisal, sec. 2208. See appeal of McMichael, at this term. It is not enough that facts should appear calculated to arouse suspicion in the mind of a prudent man, or to excite inquiry, but there must be either knowledge of the infirmity or defect, or, in this case, the fraud, or knowledge of such facts as will evince bad faith on the part of the intervenor, or holder, in taking the note, for the statute so provides.

If a statement of the law be found in any former decision of this Court which would seem to militate against the view herein expressed, it was inadvertently made, attention not having been directed at the time to the exact terms of the statute, or it was due, perhaps, to the wrong citation of the doctrine in *Bank v. Burgwyn,* 110 N. C., at p. 273, as stated in Daniel on Neg. Instruments, sec. 819, which was virtually repudiated in *Bank v. Fountain, supra,* as being in conflict with our enactment upon the question, the Court there saying that "the law, as expressed by Mr. Daniel, has been subjected to adverse comment in the decisions upon this subject, which we have adopted as law by our statute, and there is doubt if, since its passage, what is said by Mr. Daniel can be regarded as correctly stating the rule, under our statutory provision, in reference to the burden of proof," and the Court then immediately proceeds to lay down and apply the opposite rule, placing the burden upon the holder. If the burden is upon the plaintiffs, as creditors, who attack the validity of the notes, the case, as it appears in this record, would be still stronger against them.

It was suggested that there were contradictions in the testimony of E. M. Frank, but we have failed to discover them, or, at most, any material one. His deposition, on the contrary, appears now to be consistent, credible, and believable, and free, so far as we can see, from any reasonable ground of suspicion. The jury, though, must be the final arbiters of its credibility.

The case is remanded, with directions to call another jury for the trial of the issue involving the validity of the notes held by these intervenors.

New trial.