## WILLIAMS v. GREEN.

Circuit Court of Appeals, Fourth Circuit.
January 10, 1928.

No. 2650.

1. **Pleading** ☞345(1)—**Receiver of national bank, suing on note, held not entitled to judgment on pleadings, where defendant alleged bank took note with knowledge of fraud.**

In action by receiver of national bank to recover on promissory note held by bank, in which defendant admitted execution of note, but alleged that bank took it from officer with knowledge that its execution was induced by false and fraudulent representations as to solvency of bank, and set up counterclaim for amount paid on note, plaintiff *held* not entitled to judgment on pleadings.

2. **Bills and notes** ☞537(6)—**In action on note by receiver of national bank, case held for jury on theory that bank took note with notice of fraud.**

In action by receiver of national bank to recover on note held by bank, evidence *held* sufficient to take case to jury on theory that bank took note from officer with notice that its execution had been induced by false and fraudulent representations as to value of bank's stock and solvency of bank.

3. **Bills and notes** ☞497(5)—**Where execution of note is proved to have been obtained by fraud, holder must prove it took note before maturity, for value, and without notice (Negotiable Instruments Law of North Carolina).**

Under Negotiable Instruments Law as enacted in North Carolina (C. S. N. C. §§ 2976-3171, as amended by Pub. Laws N. C. 1923, c. 72), holder of negotiable note is presumed to be holder in due course; but, when execution is proved to have been obtained by fraud, burden shifts to holder to prove that it took note before maturity, for value, and without notice.

4. **Banks and banking** ☞287(1)—**National bank receiver takes assets subject to claims and defenses available as against insolvent corporation before liens attached.**

Receiver of national bank takes assets of bank as mere trustee for creditors, and not for value and without notice, and, in absence of statutes to contrary, subject to all claims and defenses that might have been interposed as against insolvent corporation before liens of United States and of general creditors attached.

5. **Bills and notes** ☞103(1)—**False statement, made without knowledge of truth or falsity, and inducing execution of note, constitutes fraud.**

In order for false representation, inducing execution of note, to constitute fraud, it is not necessary that actual knowledge of falsity should be known to party making it; it being sufficient if assertion was made without knowledge of whether it were true or false.

6. **Bills and notes** ☞140—**Curtailment and renewal of note, induced by fraud and transferred with notice, does not bar defense of fraud, nor right to recover payments.**

Where note is induced by fraud, and transferred to national bank with notice of fraud, curtailment of original note by payment thereon, and renewal by execution of another note for balance, does not deprive maker of right to defeat recovery by receiver of bank, on ground of such fraud, nor bar right to recover from receiver amount paid on note, with interest.

Action by C. L. Williams, receiver of the Commercial National Bank of Wilmington, N. C., against T. A. Green, in which defendant set up a counterclaim. Judgment for defendant, and plaintiff brings error. Affirmed.

H. Edmund Rodgers, of Wilmington, N. C., for plaintiff in error.

George Rountree, of Wilmington, N. C. (Rountree & Carr, of Wilmington, N. C., on the brief), for defendant in error.

Before WADDILL and PARKER, Circuit Judges, and HAYES, District Judge.

HAYES, District Judge. [1] On December 30, 1922, the Commercial National Bank of Wilmington, N. C., was closed by reason of its insolvency and C. L. Williams was appointed receiver, agreeably to the statutes relating to national banks. In this capacity he brought an action against T. A. Green to recover on a promissory note of $4,000 held by the bank. The defendant admitted the execution of the note, but alleged that on May 26, 1922, through the false and

fraudulent representations of T. E. Cooper, a director, and C. E. Bethea, a director and active vice president, of the bank, he had been induced to purchase $5,000 par value of the capital stock of the bank from W. B. Cooper, president and a large stockholder of the bank, and a brother of T. E. Cooper; that they falsely represented the stock to be worth $116 per share, and the bank to be solvent, when, in truth, the stock was utterly worthless and the bank hopelessly insolvent; that the bank took the note from Cooper with knowledge of the fraud; that Green paid $500 on the note 90 days thereafter, and renewed it for $4,500 for 90 days, and at that time made another payment of $500 and renewed the balance by the note of $4,000, which is the basis of this action—and set up a counterclaim, asking to recover the amount paid the bank, together with interest thereon. No reply was filed to this counterclaim. The plaintiff moved for judgment upon the pleadings, and for a directed verdict at the close of all the evidence, and the court's refusal to grant the motion constitutes the first and third assignments of error. The plaintiff was clearly not entitled to a judgment on the pleadings, but we will discuss the assignment of error to the refusal to direct a verdict in favor of the plaintiff.

[2] There is evidence to show that T. E. Cooper was a director and a stockholder, and that C. E. Bethea was an active vice president in charge of the bank and a director and stockholder; that W. B. Cooper owned about $40,000 of the stock, and was president of the bank; that T. E. Cooper, Bethea, and other stockholders and officers of the bank thought W. B. Cooper was injuring the bank, and that they solicited the defendant and asked him to buy $5,000 worth of W. B. Cooper's stock, and represented to him that the stock was worth $112 to $116 a share, and supplied him a financial statement of the bank, representing that the value of the stock was $112 or $116, and that its assets and bills receivable compared favorably with any bank in North Carolina; that these representations were made on May 26, 1922, and the bank was closed by the Comptroller of the Currency as insolvent, on December 30, 1922; that an examination of its assets revealed a large amount of worthless notes, and on which the interest had not been paid, which notes had been due for many years; that an assessment of 100 cents on the dollar was levied against the stockholders; that at the time of the trial on February 28, 1927, the receiver had been able to pay only 15 per cent. dividend to its creditors, and that the stock was worth nothing on May 26, 1922; that T. E. Cooper and C. E. Bethea knew the bank was insolvent, or made the representations that it was solvent for a fact without knowing it to be true; that Green relied upon the representations, and was induced to execute the note and to pay his $1,000 by reason thereof.

The evidence further showed that these officers of the bank were acting for it in what they conceived to be the best interest of the bank, and not in a fraudulent scheme against the bank. It is admitted in the record that the stock in question, sold to Mr. Green, was the stock of W. B. Cooper, and not of the bank.

There is no evidence in the record to show what, if anything, the bank paid for the note, and nothing to show that it took the note without notice of the fraud practiced on Green to procure the execution of the note. This statement of facts would indicate that a discussion of authorities is unnecessary. The plaintiff takes the position that the receiver of the insolvent bank cannot be defeated on a recovery on the note on account of the fraud practiced by its officers in the procurement of the execution of the note, and in support of this contention relies on Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822, and Bank of North America v. Pennsylvania Oil Refining Co. (D. C.) 216 F. 377, cited 41 A. L. R. 696.

This case is not governed by the principles of law stated in the cases cited above. This is not a note given in payment of a subscription to the capital stock of the bank. It was given to W. B. Cooper for the stock which he owned in the bank, and there is no reason in law or fact to treat this transaction as a subscription for stock in the bank. This case is essentially like the facts in Salter v. Williams (C. C. A.) 244 F. 126, which the Supreme Court refused to review, 250 U. S. 653, 40 S. Ct. 53, 64 L. Ed. 1191.

[3] North Carolina has enacted the Negotiable Instruments Law (C. S. N. C. §§ 2976–3171, as amended by Pub. Laws N. C. 1923, c. 72), and under its statutes the holder of a negotiable note is presumed to be a holder in due course, but, when its execution is proved to have been obtained by fraud, the burden then shifts to the holder to prove that it took the note before maturity, for value and without notice. There is sufficient evidence of fraud to take the case to the jury, and there was no evidence to show that the bank paid value for it and took it with-

out notice of fraud. The court, therefore, committed no error in refusing to direct a verdict. Hooker v. Hardee, 192 N. C. 229, 134 S. E. 485.

[4] The receiver takes the assets of the bank as a mere trustee 'for creditors, and not for value and without notice, and, in the absence of statutes to the contrary, subject to all claims and defenses that might have been interposed as against the insolvent corporation before the liens of the United States and of general creditors attached. Scott v. Armstrong, 146 U. S. 499, 507, 13 S. Ct. 148, 36 L. Ed. 1059. And he takes no greater rights in the property than the insolvent bank itself possessed. Fourth Street National Bank v. Yardley, 165 U. S. 634, 643, 17 S. Ct. 439, 41 L. Ed. 855; Lyons v. Westwater (C. C.) 173 F. 111; Auten v. City Electric R. R. (C. C.) 104 F. 400.

The bank's insolvency in December, necessitating the assessment of 100 cents on the dollar against the stockholders, and its inability to pay more than 15 per cent. within four years of its administration by the receiver, no evidence being produced to show that the bank sustained any loss between the date of the sale of the stock and the closing of the bank, and the further evidence that there were many notes past due and on which the interest had not been paid for years, are all amply sufficient to show that the stock was worth nothing at the time of its sale. The evidence is sufficient to show that the vice president and director of the bank participated in the fraud by falsely representing to the defendant that the bank was solvent, and that the stock was worth $112 to $116 per share, and that the bank was in as good condition as the average bank in North Carolina; that these officers knew the defendant was relying on these representations, and that they were made with the intention of his acting upon them.

While it is true that Mr. Bethea claimed that he did not know of the bank's insolvency, still he had access to its books, and particularly its bills receivable, from which he should have discovered its insolvent condition. He prepared a statement and submitted the same to Mr. Green, which represented the stock to be worth from $112 to $116 per share, when, as a fact, it was worth nothing. We think the evidence was sufficient to take the case to the jury on the theory either that Bethea, having access to the records of the bank, knew the representation as to the value of the stock to be false, or that, knowing and intending that they would be relied upon

by Green, he made them with reckless disregard of truth.

[5] It is not necessary that actual knowledge of the falsity of the representations should be known to the party making them.

"Whether the party, thus misrepresenting a fact, knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know, or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a fact, by mistake, it is equally conclusive; for it operates as a surprise and imposition on the other party. Or, as Lord Thurlow expresses it, in Neville v. Wilkinson, 'it misleads the parties contracting, on the subject of the contract.'" Smith v. Richards, 13 Pet. 26, 10 L. Ed. 42.

"A person who makes representations of material facts, assuming or intending to convey the impression that he has actual knowledge of the existence of such facts, when he is conscious that he has no such knowledge, is as much responsible for the injurious consequences of such representations, to one who believes and acts upon them, as if he had actual knowledge of their falsity." Lehigh Zinc, etc., Co. v. Bamford, 150 U. S. 665, 673, 14 S. Ct. 219, 221 (37 L. Ed. 1215).

False representations by a bank official as to the solvency and value of collateral security were held sufficient to defeat a recovery in Schmidt v. Bank of Commerce, 234 U. S. 64, 34 S. Ct. 730, 58 L. Ed. 1214. In Unitype Co. v. Ashcraft, 155 N. C. 63, 71 S. E. 61, the defense to an action on a note was grounded on false representations as to the value of the machine, the consideration for the note. The court said:

"When assurances of value are seriously made, and are intended and accepted and reasonably relied upon as statements of fact, inducing a contract, they may be so considered in determining whether there has been a fraud perpetrated; and though the declarations may be clothed in the form of opinions or estimates, when there is doubt as to whether they were intended and received as mere expressions of opinion or as statements of facts to be regarded as material, the question must be submitted to the jury."

In Planters' Bank v. Felton, 188 N. C. 384, 124 S. E. 849, the defendant had bought stock in a corporation in which the officers of plaintiff bank were closely connected. The bank bought the stock note and sued on

it; the defendant pleaded fraud and notice thereof by the bank. The defense was sustained by the Supreme Court.

[6] We do not think that the curtailment of the original $5,000 note by payment of $1,000 thereon, and the renewal by the execution of the $4,000 note, deprives the defendant of his right to defeat recovery on the note by the receiver, nor do these facts bar his right to recover of the receiver the amount, with interest, paid on the note by the defendant. Grace v. Strickland, 188 N. C. 369, 124 S. E. 856, 35 A. L. R. 1296.

After a careful examination of the record, we find no reversible error in the trial below.

Affirmed.