## STANDARD INV. CO. v. TOWN OF SNOW HILL, N. C., et al.
### No. 3853.

Circuit Court of Appeals, Fourth Circuit.
June 3, 1935.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

H. G. Hedrick, of Durham, N. C. (C. W. Hall, of Durham, N. C., on the brief), for appellant.

Larry I. Moore, of New Bern, N. C., and K. A. Pittman, of Snow Hill, N. C. (Geo. W. Edwards, of Snow Hill, N. C., on the brief), for appellees.

PARKER, Circuit Judge.

This is an appeal from a suit commenced by the Standard Investment Company against the town of Snow Hill, N. C., and the receiver of the failed National Bank of Snow Hill, to recover certain bonds pledged by the bank as security for the deposit of the town, or in lieu of this relief, to have a preferred claim for the amount of the bonds allowed against the assets of the bank in the hands of its receiver. The court below found that the town was a holder of the bonds for value and without notice, that there had been no fraud in the obtaining of the bonds by the bank and no intent to create a preference in pledging them as security for the deposit of the town, and that there had been no augmentation of the funds which came into the hands of the receiver as a result of the purchase and pledging of the bonds by the bank. On these findings relief was denied complainant as against either of the defendants; and the complainant has appealed.

The facts are that, on December 23, 1931, the National Bank of Snow Hill, of Snow Hill, N. C., entered into negotiations with the Standard Investment Company, of Durham, N. C., for the purchase of four $1,000 bonds of the town of Snow Hill, which the investment company was offering for sale. On December 24th the investment company offered to sell these bonds at a certain price, and, on December 26th, the bank of Snow Hill accepted this offer, telegraphing the investment company to make draft on it for the price of the bonds and attach them to the draft. On December 28th the investment company made draft on the bank of Snow Hill for $3,817.14 in accordance with these instructions, making the draft payable to the Fidelity Bank of Durham, N. C., and attaching the bonds. The Fidelity Bank received the draft on December 28th, credited it to the account of the investment company, with reservation of the right to charge it back if not paid, and forwarded it to the bank of Snow Hill, which received it on December 29th. The bank of Snow Hill, in payment of the draft, forwarded to the Fidelity Bank its check on the Bank of Commerce & Trusts of Norfolk, Va. This check was received by the Fidelity Bank on December 30th and was immediately forwarded to the Bank of Commerce & Trusts, which received it on December 31st, but refused payment because the bank of Snow Hill had closed for business on that day. The check was returned to the Fidelity Bank, which thereupon charged the amount thereof against the investment company.

The bonds attached to the draft were pledged by the bank of Snow Hill to the town of Snow Hill on December 29th, the day on which they were received by the bank, to secure the deposit account of the town, which at that time amounted to $5,885.53, but which was reduced to $5,514.53 by the time the bank closed. There is evidence that up to September 1, 1931, the town had asked no security for its deposit account, because its note due the bank was in excess of the amount of its deposits, but that, after the note was paid off, it demanded security, although it does not appear that it received security of any sort until these bonds were pledged to it. The closing of the bank was due to unexpected withdrawals and the failure of other banks on December 30th; and there is nothing to show that it was expected to close on the 29th or that a preference to the town was intended by the pledge of the bonds. On the other hand, it is shown that the bonds were delivered to the mayor of the town immediately upon their receipt; and there is nothing to show that he was not fully advised of the manner in which they had been acquired by the bank. He did not testify in the case; and it does not appear that he had any reason to think that the bank had paid for them otherwise than by check in usual course, which he must have known would not constitute payment unless itself paid. It appears that he withdrew certain county funds from the bank to an amount in excess of $6,000 on the day on which

the bonds were pledged to him to secure the deposit of the town.

■ The first question which arises on the appeal is whether the suit is one which can be maintained by complainant, the position of the defendants being that, upon the deposit of the draft with the Fidelity Bank, it became the property of that bank (City of Douglas v. Federal Reserve Bank, 271 U. S. 489, at page 492, 46 S. Ct. 554, 70 L. Ed. 1051), and that, upon the acceptance by that bank of a check in lieu of cash in payment of the draft, the drawer was released from liability thereon (Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261). It is unnecessary to discuss whether the Fidelity Bank became the owner of the draft as distinguished from a mere agent for collection, however, or whether the investment company could have opposed successfully the charging back of the draft to its account on the ground that a check had been accepted in payment; for it appears that the investment company has acquiesced in the charging back of the draft, and, even if the ownership of the draft and the bonds attached to it was vested in the Fidelity Bank originally as a result of the deposit, the investment company has unquestionably been subrogated to any rights of that bank with respect to the draft and the bonds. Cleve v. Craven Chemical Co. (C. C. A. 4th) 18 F.(2d) 711, 715, 52 A. L. R. 980; Morris v. Cleve, 197 N. C. 253, 148 S. E. 253, 256. The case is not one to enforce liability for negligence in the performance of a duty owing to the forwarding bank, as in City of Douglas v. Federal Reserve Bank, supra, but to reclaim property or establish a trust because of its conversion; and there can be no question but that complainant was subrogated to any rights of the forwarding bank with respect to this property, or that there was an equitable assignment to complainant of such rights when the draft was charged back to it with its consent.

■ We agree with the court below, however, that no ground for relief is shown as against the receiver of the failed bank. The bonds are not in the possession of the receiver and have in no way augmented the assets which have come into his hands. When received by the bank, they were pledged at once to the town and added nothing to the bank's assets. The case is not different, in this respect, from what it would have been if they had been used to discharge the liability to the town instead of to secure it; and the law is well settled that in the latter case there is no augmentation upon which a trust may be declared. Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288; Jennings v. United States F. & G. Co., 294 U. S. 216, 55 S. Ct. 394, 397, 79 L. Ed. 869; Old Company's Lehigh, Inc., v. Meeker, 294 U. S. 227, 55 S. Ct. 392, 79 L. Ed. 876; Lifsey v. Goodyear Tire & Rubber Co. (C. C. A. 4th) 67 F.(2d) 82, 83; Schumacher v. Harriett (C. C. A. 4th) 52 F.(2d) 817, 82 A. L. R. 1; First Nat. Bank of Ventura v. Williams (D. C.) 15 F.(2d) 585, 589; City Bank of Hopkinsville v. Blackmore (C. C. A. 6th) 75 F. 771. "When it is sought to impress funds in the hands of a receiver with a trust on account of the wrongful conversion of trust property by an individual or corporation to whose rights he has succeeded, it must be shown that the funds in his hands have been directly augmented by the presence of the trust property or its proceeds, so that a court of equity can see with certainty that the trust property is in his hands." Lifsey v. Goodyear Tire & Rubber Co., supra; Harmer v. Rendleman (C. C. A. 4th) 64 F.(2d) 422, 423; Jennings v. United States F. & G. Co., supra; Swan v. Children's Home Society of W. Va. (C. C. A. 4th) 67 F.(2d) 84; Edisto Nat. Bank of Orangeburg v. Bryant (C. C. A. 4th) 72 F.(2d) 917; Spradlin v. Royal Mfg. Co. (C. C. A. 4th) 73 F.(2d) 776.

■ We come then to the case as presented against the town, which holds the bonds under the pledge from the bank; and the position of complainant is that the town has no better right to them than the National Bank of Snow Hill had, and that the title of that bank was defective because it gave in payment for them a check which was dishonored. The position of the town is that, as pledgee of the bonds for its deposit, it is a holder for value in good faith and without notice. There can be no question, we think, but that the title of the bank was defective. The sale was a cash transaction, in which the passage of title depended upon payment; and it is well settled that, in the absence of special

agreement to the contrary, a check is conditional payment only and does not operate to effect payment unless it is itself paid. Cleve v. Craven Chemical Co., supra (C. C. A. 4th) 18 F.(2d) 711, 712, 52 A. L. R. 980; Little v. Mangum (C. C. A. 4th) 17 F.(2d) 44; Philadelphia Life Ins. Co. v. Hayworth (C. C. A. 4th) 296 F. 339; Morris v. Cleve, supra, 197 N. C. 253, 148 S. E. 253, 259; Hayworth v. Philadelphia Life Ins. Co., 190 N. C. 757, 130 S. E. 612, 613. The rule that a check of a debtor is merely conditional payment applies to obligations arising out of immediate transactions, as well as to payment of antecedent debts; and, where there is a sale for cash on delivery, and payment is made by check of the buyer, such check constitutes only conditional payment. Until the check is itself paid, the title, as between the parties, passes only conditionally; and, upon dishonor of the check, the seller may rescind the transaction and reclaim that with which he has parted. See 21 R. C. L. 64; notes to 31 A. L. R. 578 and 54 A. L. R. 526 and cases cited, and particularly In re A. O. Brown & Co. (D. C.) 189 F. 442; Young v. Harris-Cortner Co., 152 Tenn. 15, 268 S. W. 125, 54 A. L. R. 516; Comer v. Cunningham, 77 N. Y. 391, 33 Am. Rep. 626; Hodgson v. Barrett, 33 Ohio St. 63, 31 Am. Rep. 527; First Nat. Bank v. Griffin & Griffin, 31 Okl. 382, 120 P. 595, 596, 49 L. R. A. (N. S.) 1020; People's State Bank v. Brown, 80 Kan. 520, 103 P. 102, 23 L. R. A. (N. S.) 824; Johnson-Brinkman Commission Co. v. Central Bank, 116 Mo. 558, 22 S. W. 813, 38 Am. St. Rep. 615; National Bank v. Chicago, B. & N. R. Co., 44 Minn. 224, 46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. Rep. 566. Cf. Hoven v. Leedham, 153 Minn. 95; 189 N. W. 601, 31 A. L. R. 574.

Although, as the above cases show, there is some conflict in the decisions as to the right of the seller of goods, who has received in payment a check which subsequently has been dishonored, to retake them after they have passed into the hands of an innocent purchaser for value, the better rule being that they may not be retaken from such innocent holder, there is no ground for controversy where, as here, the thing sold is a negotiable instrument and the uniform negotiable instruments act is applicable. In such case, if the person to whom transfer has been made is a holder in due course, he holds the instrument free from any defect of title of prior parties. N. C. Code, § 3038. Every holder is deemed prima facie to be a holder in due course; but, when it is shown that the title of any person who has negotiated the instrument was defective, the burden is upon the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. N. C. Code, § 3040. Here, the title of the bank of Snow Hill was defective because the transaction was for cash and the check which was dishonored constituted, as we have seen, only conditional payment; and the burden rested upon the town to show that it acquired title as a holder in due course. As the bonds were not overdue or dishonored, this burden resolved itself into showing that the town acquired them for good faith and value, and that it had no notice of any defect in the title of the bank. N. C. Code, § 3033.

The town has clearly shown that it acquired the bonds for value. It took them as security for a pre-existing indebtedness, it is true, but this is sufficient to constitute it a holder for value within the meaning of the statute. Brooks v. Sullivan, 129 N. C. 190, 39 S. E. 822; J. L. Smathers & Co. v. Toxaway Hotel Co., 162 N. C. 346, 78 S. E. 224; American Nat. Bank v. Hill, 169 N. C. 235, 85 S. E. 209; American File Co. v. Garrett, 110 U. S. 288, 4 S. Ct. 90, 28 L. Ed. 149; Brooklyn City & N. R. Co. v. National Bank, 102 U. S. 14, 23–28, 26 L. Ed. 61; Swift v. Tyson, 16 Pet. 1, 19–21, 10 L. Ed. 865; 8 C. J. 488; Uniform Laws Annotated, vol. 5, p. 229; note, Ann. Cas. 1917D, 386, 387. The pledging of the bonds by the national bank to secure the deposit of the town was authorized where the giving of such security was authorized by state law. 46 Stat. 809 (12 USCA § 90); Lewis v. Fidelity & Deposit Co., 292 U. S. 559, 54 S. Ct. 848, 78 L. Ed. 1425, 92 A. L. R. 794; City of Marion v. Sneeden, 291 U. S. 262, 54 S. Ct. 421, 78 L. Ed. 787; Collins v. School District (C. C. A. 3d) 72 F.(2d) 339; Haynes v. City of Woodward (D. C.) 6 F. Supp. 270. And the law of North Carolina authorized the giving of such security. N. C. Code of 1931, §§ 1334 (70), 2969 (o); Bur-

rowes v. Nimocks (C. C. A. 4th) 35 F.(2d) 152; Page Trust Co. v. Rose, 192 N. C. 673, 135 S. E. 795, 798.

But there is nothing in the record to show whether or not the town took the bonds without notice of the defect in the title of the bank. As heretofore stated, the mayor who received the bonds and executed the receipt in behalf of the town did not testify in the case; and, for all that appears, he may have had complete knowledge of the manner in which the bonds were acquired by the bank and of the fact that they were paid for by check which, as we have seen, was only conditional payment. If he knew that the bonds had been acquired at a cash sale and that a check had been forwarded in payment, he must have known that no absolute title would vest in the bank until the check itself should be paid. In such case the town would be in no better position than if the mayor had accepted in pledge bonds in the possession of the bank which he knew to belong to some one else.

Of course, if the mayor knew that the bank was in a weakened condition and likely to fail, and that a check had been sent in payment for the bonds which would probably not be paid, the acceptance of the pledge would amount to bad faith; but the existence of such bad faith would not be necessary to subject the bonds to the claim of the seller, if the mayor had knowledge of the defect in title. N. C. Code, § 3037. It is true that the judge below found that the officers of the town "had no knowledge of the purchase of the bonds nor the manner in which the same had been bought," but there is no evidence in the record to sustain this finding. It was evidently based upon the assumption that the burden rested upon complainant to show knowledge on the part of the officers of the town, and that lack of proof justified a finding of lack of knowledge. We think, however, that the burden rested upon the town to show lack of knowledge. Section 3040 of the N. C. Code provides expressly that "when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he * * * acquired the title as a holder in due course." And the North Carolina decisions leave no doubt that the burden rests upon the holder, when the title of a prior holder is shown to be defective, to show lack of knowledge of the defect. William Whitman, Inc., v. York, 192 N. C. 87, 133 S. E. 427; Hooker v. Hardee, 192 N. C. 229, 134 S. E. 485; Metropolitan Discount Co. v. Baker, 176 N. C. 546, 97 S. E. 495; Moon v. Simpson, 170 N. C. 335, 87 S. E. 118; J. L. Smathers & Co. v. Toxaway Hotel Co., 168 N. C. 69, 84 S. E. 47, 49; Singer Mfg. Co. v. Summers, 143 N. C. 102, 55 S. E. 522, 524; Williams v. Green (C. C. A. 4th) 23 F.(2d) 796, 797.

In view of the fact that the court below must have proceeded upon an erroneous view as to the burden of proof, we feel that we should not decide the case finally upon the record before us, but should remand it so that the town may show, if it can, that it acquired the bonds without knowledge of the defect in the title of the bank or knowledge of such facts that its action in taking them amounted to bad faith. If it succeeds in doing this, a decree will be entered for it accordingly. If it fails to do so, decree will be entered for the investment company. The decree appealed from will be reversed, and the cause will be remanded for further proceedings in accordance herewith.

Reversed and remanded.