Judge Mills
delivered the opinion of the court.
Adam Rankin filed his bill in chancery in the court below, alledging, that about the year 1784, he purchased of John Maxwell a tract of two hundred acres of land, and had received possession from him, and a bond for the conveyance thereof That afterwards, in a suit brought by Maxwell against him, he furnished his counsel, Joseph H. Davies, with the bond, and had never seen it since:—That after the death of his counsel, his papers had fallen into the hands of others, and after the most strict scrutiny, he could not find it. That the bond was for land out of a preemption patented in the name of Maxwell, assignee of Patterson. He does not then produce a copy or state its contents from recollection—but proceeds to state that he had likewise, about the same time, purchased a tract of one hundred and sixty acres, or thereabout, from M’Connell, who held a pre-emption also interfering a number of acres with Maxwell’s pre-emption; and that having completed his purchase from M’Connell, he resided on the land, and the said Maxwell had filed his bill against him, setting up his, Maxwell’s, entry on said pre-emption against M’Connell’s claim, held by Rankin; and in that suit he was successful: but that during its pendency, said Maxwell had filed an amended bill, in which he had acknowledged the existence of the sale and bond, and had stated therein that the land was to be laid off by the bond adjoining the lands of Alexander M’Connell and John Campbell; and this is all the account he has tendered in his bill of the contents of the bond, or the shape the land is to assume. In an amended bill he states, that the land was to lie on the south east side of the Hickman road. He then proceeds to state that Maxwell had sold and conveyed parts of the same land *489 to Charles Humphreys and Hallet M. Winslow, and charges that they had notice of his prior purchase from Maxwell He then prays a conveyance of the land.
Humphreys and Winslow admit that they had knowledge of the purchase of Ranking but deny that it covers or interferes with them. Maxwell, as well as the other defendants, deny that the purchase or bond of Rankin is as stated in the bill. They admit a purchase and bond for the quantity charged in Rankins’ bill out of the same tract, and admit the existence of Maxwell’s amended bill in his former suit against Rankin, as set out and sworn by him; but they deny the force of it as evidence against them, because it was not sworn to by Maxwell, and was barely the suggestions of his counsel in that suit; in his absence, and is the absence of the bond itself; and they also confront that amended bill by Rankins’ own plea in the same suit, written by his counsel, in which he seems to suggest that his purchase of Maxwell covers the land on which he resides. They also set forth a copy of the bond, which Humphreys, the defendant, declares in his answer he drew from the original, having borrowed it of Rankin and, returned it to him: and Maxwell swears also in his answer, that it is a correct copy of the original bond; and denies, as well as the other defendants, any other contract. Maxwell does not contest, the payment of the purchase money, but alleges it was small; and relies on the antiquity and staleness of the transaction, so far as it respects any Other land, but admits his willingness to convey according to the Bond. The copy of the bond thus exhibited, in its condition describes the land thus:—“Two hundred acres of John Maxwell’s preemption, and part of the land on which the said John now dwells, being part of the lands the said John Maxwell got of col. Robert Patterson, being the most westernmost part of the said John Maxwell's land." And in that part of the bond which stipulates a conveyance, he binds himself “to make over and convey by deed of general warranty, the aforesaid two hundred acres, lying on the most westernmost part of the said John Maxwell's land." This is all the description of the land given by the copy exhibited, and it seems perfectly clear that the boundary has never been demarked.
The parties then went into the production of a quantity of proof, the defendants endeavoring to shew that the purchase covered Rankins’ purchase from M’Connell, where *490 he resides; and the complainant to disprove that fact. On a hearing in the court below, it was decreed that Maxwell should convey the land, as nearly in a square as practicable, to include the spring in the most westwardly part of the tract, embraced in the patent. From this decree each party appealed.
A contract that should be decreed specifically, must be certain in all its parts.
A bill in chancery should so certainly set forth the compl't's case as to enable the chancellor at once to determine on the appropriate remedy; but where relief is sought on a lost paper, a party may be permitted to mistake his case, and derive any aid he can from the answer.
It is a well settled principle, that a contract, which will be enforced in equity, must be certain in all its parts. Applying this rule to the bill of the complainant, in the court below, it may well be doubted whether from its vagueness and uncertainty it ought not to be dismissed, even if it was taken as confessed, and every word to be assumed as true. He has given us no other account of the ground that the bond was to occupy, than what he has taken from Maxwell’s bill, made part of his bill, and that is, it was to adjoin the lines of M’Connell and John Campbell. He has, not told us which line of M’Connell, when there are two in the interference with Maxwell; nor has he set forth in his bill, or made appear in proof any thing about the position of John Campbell’s line, or indeed shewn that such a line in fact existed; when these lines were both necessary to give figure to the land demanded, if it was to lie as he contends for it.
But as every person who attempts to support a bill on a lost writing, cannot have it in his power to set forth the contract, as he who has not lost his evidence; and the loss of writings must form a good exception to the rule, which requires every bill to be sufficient on its face to enable the chancellor to pronounce a decree thereon, it would be rather rigid to dismiss the complainants’ bill because it is vague and indefinite in the claim set up, without looking into the answers, and seeing whether any aid can be derived from them. An answer may sometimes aid a defective bill. And if this is permitted in any case, it ought to be in one, where the complainant has lost the writing on which his claim is based. He may then be permitted to mistake his case materially, and if the disclosure made, by the answer, should rectify the mistake, but still show that he was entitled to another claim differing in position and extent, from that stated in the bill, we see no solid objection against the complaint’s having relief granted him for that, although he cannot get that which he required in his bill.—Applying this rule to the case before us, the answers afford a valid description for two hundred acres of land out of the *491 same tract stated in the bill; but totally denies the position of that two hundred acres claimed in the bill, but gives its true position as they alledge by the copy of the bond which they have exhibited. The complainant below has not proved his own position to be correct, by a single witness, who ever saw or read the bond, or by any other kind of evidence except the amended bill of M'Connell, in the former suit against them, shall be adjudged good evidence, and sufficient to countervail the denial of the answers. This we cannot admit. It was anciently thought that a bill in chancery was good evidence against the party, even not under oath. But this rule was founded on a questionable basis. We will know that counsel are not restricted in crouding into their bills numerous allegations to dress their case, and leave it to the proof, if denied, to determine the correctness. Bills may also be written, frame and filed by counsel, without appealing to the client for their correctness, as frequently as a declaration at common law, unless the practice and the rules of law require them to be sworn to by client. A stronger reason in such cases could not be given for admitting such bills as valid testimony than there could be for admitting declarations at common law for the same purpose. Hence a modern rule is adopted, much more based in reason, to reject such bills as evidence to prove confessions against the party who filed them. The bill in this instance, offered as evidence, was not sworn to, nor was required by the rules of practice so to be. For any thing that appears, it may never have been seen and examined by Maxwell till it was set up against him in this suit. It attempted to detail the terms of written contract, which the counsel could not be presumed to have before him, or even to have seen. It is therefore deemed wholly insufficient to overrule and invalidate answers the present instance.
The allegations of a bill not under oath is not evidence against a complainant.
The defendants appear to have directed their attention in this case to proving that the bond, or the two hundred acres sold, covered the same ground that Rankin bought of M'Connell: that he purchased of Maxwell in the first instance, and took possession from him; and afterwards finding M'Connell had an elder patent upon the land, he purchased it to consolidate the claims and quiet his possession. On the contrary Rankin, complainant below, seems to have made great efforts to prove that he first purchased of M'Connell, and took possession from him of the farm on which *492 he resides; and that the purchase set up in his bill from Maxwell was of entirely distinct and adjoining or contiguous lands. It something singular that both parties should have avoided direct and special allegations to this effect in their pleadings, and try to make it out by depositions, and then in argument at the bar, ore lenus This omission to notice so important a bone of contention in their pleadings, and then bestowing so much labor on it, pays no great compliment to the preparation of either party, and has aided to embarrass this cause to some extent, by leaving it in that darkness and doubt which, to a great extent, rests upon it. The defendants, on their side, have produced two witnesses unimpeached, conducing to fix the purchase from Maxwell to be anterior to that from M’Connell, and to cover the original settlement and residence of Rankin, while Rankin has rebutted them by two more positive and as far as this record shews, equally credible, shewing that Rankin’s purchase and possession from M’Connell was the prior purchaser. These two are also corroborated by the testimony of Mrs. M’Connell, a third witness, the widow of him from whom the purchase was made. Add to this, that the bond exhibited and relied on by the defendants fixes the land to lie on the west side or part of Maxwell’s survey, and by doing so it will be seen, by an inspection of the plat, that it cannot take in the residence of Rankin and his spring, unless it is extended eastwardly till it is much longer than wide. No aid can be derived from this testimony in fixing the position of the bond. Nor does the court attach any importance to the testimony adduced by Rankin, that Maxwell had said; if Rankin lost, it must be made up out of other lands. This was but the casual conversations of Maxwell, evincing what he intended to do in case Rankin lost, instead of proving that such a clause was in the bond, which Rankin himself in his pleadings does not attempt to swear was in it. The position of the two hundred acres then, remains as fixed by the answers, and is not changed by the proof in the cause. Taking the copy of the bond then for agreed, it fixes the two hundred acres in the extreme west of the survey. And although its expressions are not grammatical; yet its meaning is plain.—The care taken to attach the bond to the west is evident by the use of the superlative, of the superlative, the most westernmost part of Maxwell’s land. To avoid the effect of these words it has been contended in argument that M’Con *493 nell’s elder grant covered this ground-that M’Connell was possessed of his grant by actual settlement thereon without the interference, which gave him the constructive possession Of that interference, and that of course, the “land” of Maxwell could not mean any part within the lines of M’Connell, as he, having neither the legal title nor possession, had no land then, as his entry did not cover it as surveyed by this court in the case of Bosworth vs. Maxwell. Admitting the premises assumed correct, we could not adopt the conclusion. It would be giving the word “land” used in this bond a very technical meaning, and disregarding the intention of the parties in using it. The bond shews that the whole tract was in contemplation of the parties when they spoke of “land.” It describes the tract as the one, on which Maxwell resided, and as the preemption “got of col. Patterson.” They therefore, intended the whole without the exception of the then untried effect of McConnell’s interference, perhaps then unknown. And had they intended to have excluded M’Connell’s interference, they could have done so, by words more appropriate. On the extreme west disregarding M’Connell’s lines, the bond must be placed.—This is evidently along the line N. O. on the connected plat made out for the trial of this cause. This line according to the calls of the patent is within four degrees of a due North and South line, and of course, presents itself as the extreme West. A line must be extended from the corner P. parallell to the line M. N. until a line at right angles thereto will include the quantity of two hundred acres—This places the land in as reasonable a form as the words of the bond will require It is evident that this position is widely different from that assumed by the court below, so far as the indefinite terms of that decree enables this court to understand it. In directing the survey as this court has done, another difficulty occurs. It is charged in one of Rankin’s amended bills, that this land or the greater part of it is lost in the suit of Bosworth and Maxwell. This loss is not denied by thy answers. Besides. Maxwell contends in this case, that the position given to his claim in that suit, in this court is the correct one, and that he has a valid entry able to cope with M’Connell’s legal estate, for so much land as is covered by his entry when surveyed as there directed. He has adduced in this cause testimony establishing the calls of his entry, and has given the position it assumed by the decree in that case. That testimony accords, *494 with that produced in the case cited. So far then, as the validity of the entry of Maxwell is here in question, we adopt the same position given to it in that case. At all events, we cannot give it more of the land assigned to Rankin in this decree, than the figure of the survey in that case has done. It is admitted by the parties that the patent of M’Connell is the eldest, and it does not appear that Maxwell has possession without these decreed lines: for these, he seems to show, as the extent of the validity of his claim. It would not be equitable then to compel Rankin to take land which, by the opposite party’s own shewing, he has no title to, either in law or equity, and the possession of which he cannot give. He ought not, therefore, to be compelled without his consent, to take any of the land outside of the decreed lines. And as it is evident that part of the land hereby allotted to him, will be without the decreed lines, and part within it, he ought not to be compelled to lose that which is within, as well as that for which he cannot get a valid claim. For it is a rule in the specific execution of contracts, that if part of the lands stipulated to be conveyed are lost, and part saved, it gives the party seeking that specific execution his election, either to take compensation for the whole, and to refuse to take any part of the land, or to take that part which is saved, and have compensation for the residue. Such was the principle adopted by this court in the case of M’Connell vs. Dunlaps, Hard. 41. Such election, this court conceives Rankin ought to have in this cause.
A party applying for a specific execution of a land contract will not be compelled to take lost land—but if part of the land described in the contract be lost, obligee has the election to take the safe part and go for damages as to the lost land, or he may refuse the land saved and go for damages for the whole.
The decree of the court below is therefore reversed, and the cause remanded to that court, with directions to cause the said two hundred acres to be laid down by actual survey pursuant to this decree, carefully demarking and distinguishing between that part of the two hundred acres which will be without the decreed lines of the survey of Maxwell’s pre-emption, assignee of Patterson, when laid down pursuant to the opinion of this court in the case of Bosworth vs. Maxwell, and also what will be within said lines, the possession of which is held by Maxwell or Rankin, or under Maxwell’s claim, and then to permit Rankin to make his election whether he will take a conveyance for that part of the decreed lines, and have compensation for the residue, or whether he will reject the acceptance of any part of the land and take compensation for the whole, and then to decree him compensation either for the whole or part, ac *495 cording to his election; and also to make such further orders and decrees as equity may require for the termination of this suit.
If the loss of land be not imputable to the vendor, the criterion of damages is the value of the land at the date of the sale, with interest from the time the purchase money fell due.
Pope and Talbot for Rankin, Haggin and Wickliffe contra.
As to the measure of compensation, it appears that the necessity of it is created by the interposition of M’Connell’s claim, and that no fraud is imputable to Maxwell by reason of which the whole land cannot be obtained. According, then, to the repeated decisions of this court, the value of the land at the time of the contract, to be ascertained the purchase money agreed to be given, if practicable, if not, then by other evidence, ought to be the criterion, with legal interest thereon from the date of the contract, or the time the purchase money became due, till paid. And as the price of the land is not proved in the cause, although there is proof of general value at that period, the court below is directed to ascertain the measure of compensation by an issue of quantum damnificatus tried by a jury. As to the cross appeal of the defendants below, although Maxwell has filed an answer in the nature of a cross bill, to which Rankin has responded, in which he claims the restoration of the possession of all the lands inside of his survey, which he accuses Rankin of taking under color of his purchase, we are of opinion that it is too brief, and indefinite to offer a sufficient issue on that subject, and too vague to authorise the interposition of the chancellor in his favor, even if it was a case proper for equitable jurisdiction. We therefore refuse the interposition for his relief therein required, and leave him to the remedy that his legal title will afford him; and Rankin must recover the costs of both appeals in this court, as Maxwell’s heirs have contended, for the decree of the court below, and have only assigned as error that it did not go farther, and restore him this land.