NAGLE et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 28, 1906.)

No. 77.

1. POST OFFICE—ACTION ON POSTMASTER'S BOND—EVIDENCE CONSIDERED.

In an action against a postmaster on his bond, a breach was alleged, in that defendant recommended and secured the appointment and payment by the United States of a laborer in his office who was wholly unnecessary. On the trial it was shown that a janitor was

necessary in the office, and also that on taking the office defendant was given a letter by his predecessor, in which the First Assistant Postmaster General authorized the appointment of a laborer at a stated salary, and asked that a certain form therefor be filled out and forwarded, which was done by defendant. *Held*, that defendant was entitled to go to the jury on the issue.

2. SAME—BREACH OF BOND—PAYMENT OF JANITOR.

A postmaster is not liable to the United States on his bond for government money paid by him as the salary of a janitor for his office, appointed by the post office department, where it is shown that the work was done, merely because the employé hired and paid scrubwomen or others to do portions of it.

3. EVIDENCE—JUDICIAL NOTICE—DEPARTMENT REGULATIONS.

A federal appellate court should not be asked to take judicial notice of department regulations, but where relied on they should be read and put into the record in the trial court.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 69.]

4. UNITED STATES—ACTION AGAINST OFFICER—CERTIFIED COPY OF ACCOUNT AS EVIDENCE.

Rev. St. U. S. § 886 [U. S. Comp. St. 1901, p. 670], which authorizes the admission in evidence, in a suit against an officer charged with the disbursement of public money, of a certified copy of his account from the books of the appropriate department, contemplates the certification only of a bookkeeper's plain statement of account; and a statement made in a certified copy of a postmaster's account, after showing that a charge was made against him, that it was on account of money paid by him to a laborer "for which no service was performed," is not admissible in evidence against him.

5. POST OFFICE—ACTION ON POSTMASTER'S BOND—EVIDENCE.

In an action on a postmaster's bond to recover money alleged to have been illegally paid out by him, evidence of what took place in the office after it was turned over to his successor was inadmissible against him.

In Error to the District Court of the United States for the Western District of New York.

This cause comes here upon a writ of error to review a judgment of the Circuit Court, Western District of New York, in favor of defendant in error, who was plaintiff below. The facts sufficiently appear in the opinion.

A. C. Wade, for plaintiffs in error.

Chas. H. Brown, for the United States.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The action is brought upon a postmaster's bond against the postmaster and his sureties. The condition of the bond is that:

"If the said Fred C. Nagle shall faithfully discharge all the duties and trusts imposed on him, either by law or the rules and regulations of the Post Office Department of the United States, and shall perform all other duties and obligations imposed upon or required of him by law or the rules and regulations of the said Department, in connection with the money order business, then the above obligation shall be void; otherwise, of force."

Nagle was appointed postmaster of Dunkirk, N. Y., in February, but did not enter upon the duties of his office until May 1, 1898. The

breach assigned is that on May 2, 1898, Nagle recommended to the first Assistant Postmaster General that one John A. Link be designated and appointed as a laborer in the post office at Dunkirk from May 1st at a salary of $600 a year; that, pursuant to such recommendation, the First Assistant Postmaster General duly appointed him, and his name was placed on the pay roll, and Nagle thereafter paid him such salary from time to time, quarterly, aggregating to and including June 30, 1902, $2,500.55; that on said May 2d it was, and ever since has been, wholly unnecessary and useless for the proper conduct of the business of that post office that Link or any other person should be designated and appointed as a laborer, as the said Nagle then and there well knew; that said Link never at any time since May 1, 1898, has performed any duties whatever, as laborer or otherwise, in the Dunkirk post office that would entitle him to any part or portion of the moneys so paid him, as Nagle then and there well knew; that Nagle paid the money to Link, then and there well knowing that the said Link had not performed any services whatever in said post office, as laborer or otherwise. It will be observed that two essentially different breaches are assigned; the one concerned with the original appointment, the other with the subsequent payments. The trial judge apparently relied upon the latter breach, for in directing a verdict for plaintiff for the full amount he said: "Nagle defaulted his bond to the government when he permitted this man, Link, to receive remuneration—receive emolument—without doing the work for which he was hired." And again: "Nagle violated his trust when he permitted Link to pay others to do the work for which he was hired." The plaintiffs in error, by requests to go to the jury separately on all the different issues, and by sufficient exceptions, timely reserved, have put themselves in position to argue the whole case here.

As to the first breach: The evidence showed (and, indeed, it would hardly need much proof to show) that besides the clerical work required in the Dunkirk post office, it was necessary that some one should keep the place clean. The furniture had to be dusted, the floor swept and sometimes scrubbed, litter removed, the windows washed, etc. Our attention is called to no statute nor to any post office regulation which makes it the duty of a postmaster or of his clerks in a post office of the first and second class to scrub the floors and wash the windows. From the citations in the brief of the District Attorney, it may be inferred that Dunkirk is a first or second class post office. Whether the building in which it is located is owned by the government or leased does not appear; but certainly any one coming to fill the position of postmaster there might fairly assume that by a janitor or some other person regularly appointed or temporarily hired for the purpose the government of the United States expected that its post office should be kept clean and decent for the dispatch of public business. The defendant, as we have seen, did not take office till May 1st. The first he heard of Link in connection with the office was the day before, April 30th, when his predecessor handed him the following letter:

"Post Office Department.
"First Assistant Postmaster General, Salary and Allowance Division.
"Washington, April 28, 1898.
"Subject: Laborer.

"Postmaster, Dunkirk, N. Y.—Sir: You are hereby authorized to appoint John A. Link as laborer in your office, at a salary of $600 per annum from May 1, 1898. Please report appointment on form A–45.

"Very respectfully,                                    Perry S. Heath,
                              "First Assistant Postmaster General."

It will be observed that this was not addressed to Nagle, but to his predecessor, and was received by his predecessor. Moreover, it seemed fairly to import that the subject of the appointment and of the salary had already received consideration at Washington and been acted upon; nothing being left for the postmaster to do but to fill up the form referred to. The District Attorney argues that this letter was an absolute nullity. He asserts that the First Assistant Postmaster General "had no authority whatever to write such a letter without a recommendation from the postmaster." That may or may not be so—we do not find warrant for the statement in the quotations from any post office regulations printed in his brief—but if the regulations did forbid the Assistant Postmaster General to act until he had first received a recommendation, that circumstance does not help the case at bar. It is well-settled law that it must be presumed that a public officer performs his duty until there is some evidence tending to show the contrary. If a recommendation was required, it will be presumed that the Assistant Postmaster General had one before him when he wrote. Certainly, there is nothing in the record to indicate that he had not. After receipt of the letter, Nagle on May 2d signed and forwarded the form which recommended the appointment of Link as a laborer. In this state of the proof the defendants were clearly entitled to go to the jury on the question whether there was a breach of the bond in recommending the appointment of an unnecessary and useless person as laborer in the Dunkirk post office. Whether or not the plaintiff had shown enough to go to the jury on the same question, we do not express an opinion, since upon a new trial further facts may be shown.

The other alleged breach presents a different question. It may be conceded that when a postmaster, continues for four years paying government money to a person whose name may be on the pay roll, but who to his knowledge does no work and renders no service, he fails to faithfully discharge all the duties and trusts imposed upon him. But that is not this case. There was evidence from which the jury might infer that Link did some work himself. There was undisputed evidence that he hired a scrubwoman, who washed the floors, and paid her himself for her services. The trial judge held that such an act was highly improper, that it was "debasing"; why so, the record does not disclose. We do not see why a janitor or laborer hired to keep a public building clean may not employ scrubwomen to assist him in his task, nor what principle of law or statute or regulation he would violate in so doing. The postmaster and his sureties could not be called upon to repay to the government money paid out to the laborer for work which he did himself, and for work which he procured to be done by a proper person, for whose services the laborer paid. As to the amount of the compen-

sation to be paid for all such laborer's work as might be required there, whether much or little, it was certainly an open question, so far as defendants were concerned, whether that had not been determined by the post office authorities without Nagle's participation.

Since these conclusions lead to a reversal, and there must be a new trial, it may be proper to call attention to some other matters suggested by the record. We express no opinion as to the effect of payments to Link of moneys which the postmaster knew were by Link paid to clerks in the office who themselves swept and dusted the office, or parts thereof, since additional proof on the new trial may be of some importance. Reference is made to the regulations of the post office, and some sections thereof are printed in the brief, but none of them are set forth in the record. The decisions of the Supreme Court on the subject of judicial notice of such rules and regulations are not entirely uniform. Caha v. U. S., 152 U. S. 221, 14 Sup. Ct. 513, 38 L. Ed. 415; The E. A. Packer, 140 U. S. 367, 11 Sup. Ct. 794, 35 L. Ed. 453. Where there is some question of statute law, where the court can itself by reference to books with which it is familiar, and which each judge possesses, determine just what statutory provisions were in force at a given date, there is no necessity for incumbering the record with them. But it is different with departmental regulations. No department ever sends its compilation of regulations to the judges. They are frequently amended, and, without special information from the department, no one can tell whether a particular regulation in some printed compilation was in force a year later. It is grossly unfair to a trial judge to cite some regulation upon a brief on appeal which was not laid before him on the trial. We have no doubt that it is far better practice to read any special regulations which may be relied upon into the record before the trial court. It is a hopeless task for an appellate court to determine what such regulations were at any particular time. It must either accept counsel's statement, or itself make inquiry of the particular department; neither of which practices is to be commended. It is to be hoped that upon the new trial the various regulations bearing upon the questions presented by the case may be specifically referred to.

The trial judge admitted in evidence a certified statement of account of Nagle as postmaster at Dunkirk. It stated, not only that Nagle was charged with the amount paid to Link as a laborer, but also added, "for which no service was performed." Defendants duly excepted. The part quoted is manifestly inadmissible. The statute (Rev. St. U. S. § 886 [U. S. Comp. St. 1901, p. 670]) contemplates that only the plain bookkeeper's statement of account may be thus certified in place of proof; it does not make judicial officers of the clerks in a department who make such entries. U. S. v. Case (D. C.) 49 Fed. 270.

It was also error to allow Nagle's successor in office to testify that, after Nagle had left, Link did no work in the Dunkirk office, and did not report there for work, and that there was no position in the office known as "laborer." With what took place after his office was turned over to his successor neither Nagle nor his bondsmen had any concern.

The judgment is reversed, and cause remanded for new trial.