# Beck v. First National Bank of Charlestown, Ind.

(Decided Oct. 20, 1933.)

STEINFELD & STEINFELD and EUGENE HUBBARD for appellant.

DODD & DODD for appellee.

Opinion of the Court by Judge Thomas—Affirming.

In September, 1929, the appellant and defendant below, Anna Fillion Beck, executed her note to the National Bank of Kentucky, a national banking institution then operating in Louisville, Kentucky, agreeing to pay it some months thereafter the sum of $2,650, the proceeds of which were appropriated by her to purchasing a number of shares of the stock of another corporation known as Banco-Kentucky, at $25 per share, which was then the price at which it was selling on the market, and which it was then thought to be worth (as we believe the evidence shows) by those responsible for its organization, embracing the National Bank of Kentucky and its officers. Before the note became due, the appellee and plaintiff below, First National Bank of Charlestown, Ind., purchased it for value from the National Bank of Kentucky, the latter indorsing it "without recourse," thereby investing plaintiff with title thereto as a "due course" holder; unless there was fraud practiced on defendants by the National Bank of Kentucky at its obtention, and plaintiff at the time had knowledge thereof.

The same is true with reference to later substituted notes executed by defendant to the same payee and discounted in the same manner to plaintiff. Such substituted notes were, from time to time, executed by defendant at due dates of immediately prior ones; the last one being of date September 2, 1930, and due four months thereafter. Plaintiff became the holder thereof in the manner indicated and after its maturity instituted this action against defendant in the Jefferson circuit court to recover thereon. She defended by denying that plaintiff was the holder thereof in due course, and in another paragraph affirmatively alleged: (a) Fraud on the part of the officer of the National Bank of Kentucky with whom she negotiated the note; and (b) that plaintiff when it obtained the note had knowledge thereof. That paragraph of the answer was denied by reply, which completed the issues, and upon trial the court at the close of plaintiff's testimony peremptorily instructed the jury to return a verdict for plaintiff, which was done, and from the judgment rendered thereon defendant prosecutes this appeal.

It will be observed that the note is one embraced

by our Negotiable Instruments Act, now sections 3720b-1 to and including 3720b-195 of our present Kentucky Statutes, and it became necessary for defendant to establish by her proof not only defense (a), but likewise defense (b), supra, and the trial court concluded that inasmuch as it was clear that she failed to prove defense (b) plaintiff was entitled to judgment against her, and for which reason the directed verdict was ordered, and in which we coincide.

The agent or officer of the National Bank of Kentucky with whom defendant had all of her conversations with reference to purchasing stock in Banco-Kentucky was Mr. Thieman, a vice president, who told her, in the conversation with reference thereto, of his good-faith belief in the soundness of the institution, as well as its paying prospects in the way of dividends, telling her at the time that he himself had made a large investment in it, and which the testimony shows was true. Defendant had made under the same circumstances a purchase of some of the stock before executing her first note to buy an additional amount, and upon which a satisfactory return in the way of dividends was received by her before her additional purchase was made with the proceeds of her first note of which the one sued on is a substitute, and it appears, as we conclude from the testimony, that her determination to make the latter investment was arrived at more from her experience as a prior stockholder in Banco-Kentucky than from anything that was said to her by Mr. Thieman on the occasion of her second purchase when she executed her first note.

Following the execution of the note sued on, the National Bank of Kentucky was taken charge of by the Federal Controller of the Treasury, who began the process of liquidating its assets. Divers and sundry litigations followed, and a large part of the testimony in this case consists in the introduction of pleadings in such litigation, which contained allegations and statements by stragners to this action, and it is doubtful if they were competent; but, waiving that question, such pleadings were necessarily confined to and dealt with facts existing at the time they were filed or drafted, and not to the state of affairs existing at the time defendant executed her original note, and for which reason also their competency might be seriously questioned.

But, passing all such criticisms, the law is, that to constitute actionable fraud in the obtention of a note, or in other cases, "it must appear: (1) That defendant [or the one charged therewith] made a material misrepresentation; (2) that it was false; (3) that, when he made it, he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff [or the one addressed]; (5) that plaintiff [or the other one] acted in reliance upon it; and (6) that he thereby suffered injury. Baker v. McDonald, 185 Ky. 470, 215 S. W. 292; Hicks v. Wallace, 190 Ky. 287, 227 S. W. 293; Crescent Grocery Co. v. Vick, 194 Ky. 727, 240 S. W. 388." See Peake v. Thomas, 222 Ky. 405, 300 S. W. 885, 886.

That statement embodies the universal definition of "actionable fraud." The evidence leaves it exceedingly doubtful if the necessary elements 2 and 3 therein, or either of them, were proven. On the contrary, defendant's testimony, so far as it sought to establish them, clearly indicated that those interested in Banco-Kentucky in good faith believed that it was a sound financial institution and that the principles upon which it was organized and was being conducted would prove profitable to its stockholders. But, if it were otherwise as to element 2, then it is quite clear that element 3 was not proven, since Mr. Thieman, with whom defendant conversed, and who was the sole officer of the National Bank of Kentucky whom she consulted, was enthusiastic over the prospects for the success of Banco-Kentucky, in which, we repeat, he had made a large individual investment.

However, if we should put aside all such considerations relating to defense (a), it would then require an affirmative finding of defense (b) before defendant could defeat liability on the note sued on. In her effort to establish that defense she introduced Mr. Walter T. Zur Schneide, who prior to 1930 was the auditor of the National Bank of Kentucky, and after that time and up to its going into liquidation was its cashier, and he testified that the original note executed by defendant to his bank was discounted in the regular way to plaintiff before its maturity, and that it was customary, and a system of his bank, to notify those to whom it had discounted notes to return them to his bank ten days

before their maturity (and which was followed in this case) when the maker or makers would be notified, and if payment was made the amount would be credited to the owner of the note, the customer of his bank; but if it was not paid in cash, then a new note would be taken in the same manner and form as the prior one, but which the customer was not compelled to accept unless he or it so desired, and that in either event the customer would be credited with the amount of the note and interest upon which it could make withdrawals. He, however, testified that in this case, as in practically all others, the customer consented to accept the substitute note, and the credit so given would then be cancelled, or perhaps not entered. It was in pursuance to such custom and method of accounting, according to that witness, that the note sued on was executed and then negotiated to plaintiff.

We do not regard such procedure as creating the relationship of principal and agent between plaintiff and the National Bank of Kentucky so as to charge the latter's knowledge at the time of the execution of the substituted note of any fraud or defect therein, to plaintiff, the alleged principal. The sum and substance of the whole matter was only a means of liquidating the immediately prior note and did not change the status of the parties from what they occupied following the negotiation of defendant's first note. We are so convinced of the correctness of that conclusion that we deem it unnecessary to enter into a lengthy discussion of it, or to insert or refer to substantiating cases, although the case of Palmer & Hardin v. Grand Lodge of Knights of Pythias (Ky.) 121 S. W. 678 (not elsewhere reported), might be consulted on the question of the alleged agency relied on by defendant, and the one of Security Finance Co. v. Thompson, 216 Ky. 364, 287 S. W. 938, is a case substantiating the necessity of proving defense (b) supra.

Defendant also sought by counterclaim to recover a credit which plaintiff had placed on the note, amounting to $1,072.50, the proceeds of ten shares of the preferred stock of the Louisville Gas & Electric Company, which plaintiff contended had been placed by her as additional collateral security to the note sued on after its maturity, and after it had been sent to the Citizens' Union National Bank in Louisivlle, Ky., for collection,

since the National Bank of Kentucky had then gone into liquidation. Defendant averred that she never agreed with the Citizens' Union National Bank for that stock to be placed as collateral security for the note in litigation; but her testimony clearly fails to establish her pleading. At the time she was notified by that collecting bank that it had the note for collection; the gas and electric company stock was up as collateral to a note for $300 held by the Kentucky National Bank, and the officers of the collecting bank informed her that she could release such collateral security by paying that $300 note, and suggested to her that she then take down the collateral gas and electric company stock and place it as additional security to the note sued on, which we think the evidence conclusively showed she agreed to and did. Moreover, it is doubtful if she could complain if it were otherwise, since there is no contention that the sum realized for such collateral was not its full and fair value, and if so she got the benefit of it by crediting the amount on the indebtedness sued on.

Upon the whole case, we find no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.