**ANDERSON v. TWAY.**
No. 9250.

Circuit Court of Appeals, Sixth Circuit.
June 12, 1944.

96

SIMONS, Circuit Judge, dissenting in part.

Robert S. Marx, of Cincinnati, Ohio (Robert S. Marx, Frank E. Wood, Harry Kasfir, and Nichols, Wood, Marx & Ginter, all of Cincinnati, Ohio, on the brief), for appellant.

Charles I. Dawson, of Louisville, Ky. (Woodward, Dawson & Hobson, Charles I. Dawson, J. Verser Conner, and Joseph Selligman, all of Louisville, Ky., on the brief), for appellee.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

My brothers agree with all of the views herein expressed except in respect to the admission of certain evidence which, in my judgment, it was error to receive and so prejudicial to the cause of the receiver as to require reversal and remand of the cause to the District Court for retrial. They disagree also with the view that the newly discovered evidence submitted to the court upon petition for rehearing, had such material bearing upon the issues as to require its submission to the jury upon a retrial. It follows, therefore, that in respect to such matters the opinion is but my own and will not control decision.

This is the latest case to reach us in the long series of controversies involving the activities of the National Bank of Kentucky and the Banco-Kentucky Company, including, among others, Atherton v. Anderson, 6 Cir., 86 F.2d 518, reversed 302 U.S. 643, 58 S.Ct. 53, 82 L.Ed. 500; Atherton v. Anderson, 6 Cir., 99 F.2d 883; Anderson v. Abbott, 6 Cir., 127 F.2d 696, reversed 321 U.S. 349, 64 S.Ct. 531, and Laurent v. Anderson, 6 Cir., 70 F.2d 819. While the cited cases involve the liability of officers and directors of the bank for violations of the National Banking law or for negligence, and double liability of Banco-Kentucky and its shareholders, because of ownership of bank stock, the opinions therein tell the history of the bank and the nature of its operations, explain the purpose and plan of Banco's creation, and so free us of the necessity of repeating much of the story as it bears upon the instant controversy.

The present case is the result of an effort of the bank's receiver to recover on a $50,000 promissory note given by Tway to the bank to enable Tway to purchase 2,000 shares of Banco stock, the bank agreeing to accept the stock as sole collateral for the note. When both Banco and the bank failed, Tway refused payment and defended the suit which followed, on the ground that the giving of the note and the purchase of Banco stock constituted a single transaction into which he was induced to enter by reason of the fraud of the bank in falsely representing to him its financial status and in concealing from him material facts impairing it, such facts being important because the greater part of Banco's assets consisted of stock in the bank. The issues were submitted to a jury, a verdict was returned for Tway, a motion for new trial, based upon newly discovered evidence, overruled, and judgment followed.

The receiver assails the defense of fraud on numerous grounds. He says there was no susbtantial proof of the alleged misrepresentations or fraudulent concealment; that fraud may not be asserted as a defense to a note but only by way of counterclaim or separate suit for damages; that Tway knew that the alleged misrepresentations, concealment, the promotion of Banco and sale of its stock, were ultra vires the powers of the bank and knowingly participated; that in any event he ratified and acknowledged liability after becoming aware of the true situation; and that his defense is barred because in conflict with the position taken by him as a defendant in Anderson v. Abbott, supra, the stockholders' assessment suit. The receiver also challenges the judgment because of errors by the trial court in the admission of incompetent and prejudicial evidence, errors in instructions to the jury and the court's abuse of discretion in overruling the motion for new trial based upon newly discovered evidence material to the issues involved.

Under familiar principles we consider the evidence in the light most favorable to the party who prevailed at the trial. Banco-Kentucky Company was incorporated on July 16, 1929 under the laws of Delaware. It issued a prospectus setting forth that its stock would be exchanged for outstanding stock in the National Bank of Kentucky and the Louisville Trust Company, represented by trustee participation

certificates, at the rate of two shares of Banco for one share of bank stock with an original subscription price of $25 for each of its shares. Tway's story is that Thieman, vice president of the bank, a lifelong friend whose judgment he had habitually sought on important matters, began in July or August of 1929 to interest him in the purchase of Banco stock, giving him a glowing description of the possibilities of a company able to engage in transactions prohibited to banks. He furnished him with a copy of the prospectus, advised him he did not need any money because the bank would lend him the entire purchase price on the security of the stock, that a Chicago investment house had subscribed for 250,000 shares at $25 per share and wanted more, and that after October 1st he would have to pay more than $25 for the stock. October 1st Tway yielded to Thieman's importunities and agreed to take 2,000 shares of Banco. The transaction was consummated at the bank. It was there that Tway signed a subscription blank, executed a four months' note to the bank for $50,000, an assignment of the stock with power of attorney to transfer it, and a counter check payable to Banco-Kentucky for $50,000. All of the papers were in the handwriting of the discount clerk who stamped the name of the payee on the check with a stencil kept for that purpose by the bank, and stamped thereon Banco's endorsement to the bank. The bank credited Tway's checking account with the proceeds of the note; charged it with the check; and credited Banco's account with $50,000. Tway's subscription and power of attorney were delivered by the bank to the Louisville Trust Company as Banco's transfer agent, temporary certificates as issued were delivered to the bank, and permanent certificates, when substituted, were also delivered to the bank. Tway never had possession of the certificates. They remained in the possession of the bank until the appointment of the receiver, and thereafter passed to the possession of the receiver.

The officers and directors of the bank promoted the formation of Banco. They all exchanged their participation certificates for Banco stock and most of them bought additional shares. Tway's only information as to the condition of the bank was its general reputation, the reputation of its officers and directors, the statements of Thieman, and the published statement of the bank which showed a capital of $4,000,000, surplus of $2,000,000, and undivided profits of approximately $235,000. He had no information as to the plan for the formation of Banco or concerning its financial structure except what was derived from its prospectus and Thieman's representation. He had no knowledge of the facts and circumstances subsequently disclosed respecting the impaired assets of the bank, an impairment which vitally affected the value of its shares and therefore the value of Banco stock. Tway executed three renewals of his original note, the last being the one here involved, dated October 2, 1930. At the time of each renewal he paid interest to the date of maturity. He received four quarterly dividends of $400 each on the 2,000 shares of Banco stock, the last in October, 1930. When he renewed his note or received dividends, he had no more information concerning the bank and its condition than he had at the time he purchased the stock and executed his original note.

The improvident loans made by the bank, the great overdrafts permitted to the Kentucky Wagon Manufacturing Company, the Herald Post Company, and others, the loans to Consolidated Realty Company, Kentucky Jockey Club, and Wakefield, beyond the limit authorized by the National Banking Law, are elsewhere detailed (Atherton v. Anderson, supra), and need not be restated. So also are the reports of the National Bank examiners prior to Tway's purchase of Banco stock, and the letters of warning sent to the bank by the Deputy Comptroller of the Treasury. These reports and warnings, we know, were concealed by Brown, president of the bank, from the directors and from officers not in his confidence. It is conceded that Thieman knew nothing of them and his good faith is not impugned. Tway knew that Thieman himself had exchanged his own participation certificates for Banco stock and had subscribed for many shares in addition to those received in exchange for certificates. Indeed, the proof discloses that Thieman exchanged 1760 participation certificates for Banco stock, and subscribed for an additional 6480 shares at $25 per share. So it is argued by the receiver that since actionable fraud must include an intention to deceive as one of its elements, and the bank, as a fictitious entity, may have such intention only as can be attributed to it because of deceit by its agents, the defense must fail. Thieman

did not intend to deceive Tway by representations or concealment, so the bank could not.

It is now, however, very generally held that knowledge may be attributed to persons making false representations in circumstances where it is their duty to know whether such representations are true or false, or where they have the means of knowing the truth. 23 Am.Jur. p. 127. Culpable ignorance furnishes no immunity for false representations or concealment. In Atherton v. Anderson, 99 F.2d 883, upon the consideration of many cases, we held it to have been the duty of the directors of the bank to have known the facts and that they would have known them had they exercised proper supervision over the activities of the bank. Upon the record there disclosed they were not permitted to excuse themselves from the charge of negligence by saying that they were deceived. What is true of Thieman's representations or concealment is equally true of the published statements issued in the name of the officers and directors of the bank proclaiming its sound condition. Since bank stock constituted the greater part of the assets of Banco, knowledge of the financial condition of the bank was vital to Tway. The real facts which Thieman, though unknowing, should have known, being concealed from Tway, there arose a justiciable defense to the payment of the note, with an issue of fact as to concealment and reliance thereon, to be submitted to the jury. So far, we are all agreed.

The proofs, however, went far beyond the condition of the bank and Banco when Tway purchased his stock on October 1, 1929. Tway was permitted to show that in November, 1929, the Wakefield line in the bank was taken over by Banco through the execution of a $2,000,000 note by Brown to Wakefield, purchase of the note by Banco from Wakefield for $2,000,000, out of which Wakefield paid its obligation of $550,000 to the bank. He was permitted to show that Banco took the Kentucky Wagon Works indebtedness out of the bank by delivering 100,000 shares of its stock with a par value of $1,000,000, and a market value of $2,500,000, to Caldwell and Company under agreement that Caldwell would turn the shares over to the National Bank of Kentucky in exchange for the bank's claim against the Wagon Company, to liquidate that claim and turn over the net proceeds to Banco.

In reality, Banco received the worthless Wagon Company asset upon which nothing was ultimately realized,—a transaction characterized by the bank examiner as a "washed sale" adding nothing to the assets of Banco. Tway was also permitted to show that in October, 1930, a year later, Banco borrowed $600,000 with which to purchase from the bank the worthless Murray Rubber Company debenture notes and a $20,000 participation in the note of one Humphrey who had died insolvent, and that these assets also proved to be worthless, the transaction having been held to be a fraud on Banco in a suit by the receiver of Banco against the receiver of the bank. Banco Kentucky Co.'s Receiver v. National Bank of Kentucky's Receiver, 281 Ky. 784, 137 S.W.2d 357. He was also permitted to show that in November, 1929, the officers of the bank borrowed for Banco in New York on its collateral $1,000,000 which it did not need but which the bank did, and caused the money to be deposited in the bank to the credit of Banco. He was further permitted to show losses which occurred after his purchase of Banco stock, in the purchase by Banco of stock in the Brighton Bank and Trust Company and the Pearl Market Bank and Trust Company of Cincinnati, from which substantial losses resulted. But neither Thieman nor the bank was a guarantor of the financial success of the Banco venture, and neither could be charged with knowledge of future events. The transactions narrated could become material to the charge of fraud only upon proof that they were in pursuance of a previously conceived plan to incorporate Banco and to utilize it for the execution of a fraudulent purpose, and it is with this aspect of the record that I now concern myself.

It was Tway's original contention that he was defrauded not only by concealment from him at the time he bought Banco stock, of the true condition of the bank, but that Banco was organized for purposes of fraud, including therein a purpose to remove from the bank its bad assets through the use of the funds of Banco. This he undertook to show by the receiver's petition in the director's suit, and by statements in bank examiners' reports based obviously on hearsay, that the purpose of Banco's organization was acquisition of such assets. This evidence was challenged on the ground that the unverified allegations of a bill are not admissible against the pleader in another action, and

also on the ground that bank examiners' reports, though official records, are not competent unless identified by those who made them in submitting themselves to cross-examination.

■■■ While it had been the rule that unverified allegations of a bill are not admissible in another suit, Delaware County Com'r v. Diebold Safe & Lock Co., 133 U. S. 473, 10 S.Ct. 399, 33 L.Ed. 674; Rankin v. Maxwell's Heirs, 9 Ky. 488, 12 Am.Dec. 431, the modern view is that where a suit has been prosecuted in full reliance upon the allegations of a petition, they become admissible against the pleader. 20 Am. Jur. 536; City of Rockland v. Farnsworth, 89 Me. 481, 36 A. 989. The party who made the pleading is, however, permitted to show that his allegations were erroneous. Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, 2 Cir., 32 F.2d 195; First Nat. Bank v. Wisdom's Ex'rs, 111 Ky. 135, 63 S.W. 461. Since the opinion in Atherton v. Anderson, supra, was an adjudication that there was no fraudulent intent in the organization of Banco, the receiver should have been permitted, by means of it, to demonstrate the error in the allegations of his pleading. Tway now contends that he did not rely upon the allegation that Banco was organized for the purpose of removing bad assets from the bank. That issue was, however, submitted to the jury and there can be no doubt that the evidence bearing thereon was prejudicial. So with hearsay statements in the examiner's reports. While as official records they may be admissible to show such facts as are within the personal knowledge of the examiner, I doubt their admissibility in respect to statements clearly indicated as those of informants, whose accuracy is not guaranteed. Nagle v. United States, 2 Cir., 145 F. 302. If such statements are admissible then the faintest breath of rumor or scandal may be legitimized as evidence merely by including it in an official report. This cannot be the law.

Not only was the evidence above described, incompetent, but, insofar as the removal of impaired assets from the bank was alleged to constitute the fraud, I have grave doubt as to its materiality. The essence of Tway's claim of fraud was that he was deceived in the value of the bank stock which constituted the bulk of the assets of Banco, that this stock had been impaired by reason of the bank's improvident loans and negligent overdrafts. Clearly, if these doubtful assets were to be removed from the bank by the subsequent operations of Banco in furtherance of a preconceived plan, the bank shares would be restored to the value he assumed them to have. True, Banco's position might remain unsound, but no more so than when possessed of impaired bank shares. Neither the plan to remove doubtful assets from the bank nor its consummation added anything to or subtracted anything from the alleged fraud, and neither Thieman nor the bank can be charged with knowledge of the unsound manipulations of Banco subsequent to Tway's purchase. Nor does Tway's present repudiation of dependence on the removal of unsound assets as fraudulent cure the prejudice which Brown's washed sales and subterfuge must have created in the minds of the jury.

There was no substantial evidence that the operations of Banco subsequent to Tway's purchase of its stock, were in furtherance of a previously conceived plan on the part of the directors of the bank to organize Banco for a fraudulent purpose or to transfer the doubtful assets of the bank to Banco by unsound and unlawful manipulation of the funds and assets of Banco. A fraudulent purpose, like its consummation, must, under familiar rules, be established by evidence that is clear and convincing. I arrive at the conclusion that the operations of Banco subsequent to Tway's purchase of its stock, were inadmissible as evidence, and that such manipulations as were permitted to go to the jury, even though not now relied upon by Tway, were so prejudicial to the rights of the receiver as to require a new trial.

■■■ Since the case should, in my judgment, be retried it becomes important to consider other grievances of the receiver. Since the evidence, in the light most favorable to Tway, indicates that Banco was formed by officers and directors of the bank, all of whom were interested in promoting its organization, that the officers of Banco were the same as those of the bank, that its office was the office of the bank, that the Tway transaction was completed entirely within the bank and by the agents of the bank, the receiver's contention that the purchase of Banco stock and the loan from the bank to Tway were, as a matter of law, separate and independent transactions, must fail. The bank sold him the stock and provided him with the money with which to buy it. Without the

loan he would not have made the purchase. This likewise disposes of the receiver's contention that because Tway had a balance at the bank prior to his being credited with the avails of the loan, and because his check to Banco did not exhaust his balance so augmented, the loan and purchase must be regarded as independent transactions, by applying to the deposit withdrawal the first-in first-out rule. So considered, there is demonstration, he urges, that Tway used his own money in part payment of Banco stock, and a portion of the loan for other purposes. The avails of the loan were, however, so clearly identified and allocated to the purchase of the Banco shares that there is no room for the application of the first-in first-out theory.

Banco stock, atlhough later valueless, had both intrinsic and market value at the time it was purchased by Tway. The Louisville Trust Company, the shares of which were represented by the participation certificates exchanged for Banco stock, was solvent, and Banco had cash and other stocks. Moreover, Tway admits that before he discovered the alleged fraud he could have sold his Banco shares on the market and realized a profit of $18,000. This being so, the receiver contends that Tway, having received value for his investment, should be allowed to recover, if anything, only his damages at the time of the purchase, namely, the difference between what he paid and the value of the stock at the time of purchase. Hindman v. First Nat. Bank, 6 Cir., 112 F. 931, 57 L.R.A. 108. Perhaps this would be true if Tway had elected to affirm the contract and sue for damages by reason of the fraud. He could also have elected to rescind and have sued in equity for the return of his note, though he could not do both. Such election was not, however, his exclusive remedy. Having neither affirmed nor rescinded, he was entitled to interpose the defense of fraud to a suit upon the note. 5 Williston on Contracts, §§ 1523, 1525; 8 Am.Jur. 292, § 587. Moreover, the fraud charged being deceit or concealment, its effect continues until discovery of the true facts.

The receiver also urges that Tway is barred from recovering by his failure to surrender the stock or return the dividends. It is true that if he had received consideration which retained value, he would be required to return it if still in his possession. Pence v. Langdon, 99 U.S. 578, 25 L.Ed. 420; 5 Williston 4290. But Tway never had the stock certificate. Under such circumstances he was not obliged to return it. Nor was he required to return the dividends. Even in affirmative actions to rescind, as in Page Belting Co. v. Prince & Co., 77 N.H. 309, 91 A. 961, and Taylor v. Lounsbury-Soule Co., 106 Conn. 41, 137 A. 159, a plaintiff need not tender return of dividends where he is entitled to get back considerably more. Here the proofs show that Tway had paid out in interest far more than the amount of the dividends.

The fact that the bank's assets were depleted by the Tway loan does not, of itself, compel the conclusion that Tway is required to pay the note. There is no novelty in the doctrine that one who is guilty of fraud may be compelled to reimburse the defrauded party even though he has not himself benefited through the fraud. Oppenheimer v. Harriman Nat. Bank & Trust Co., 301 U.S. 206, 57 S.Ct. 719, 81 L. Ed. 1042; National City Bank v. Carter, 6 Cir., 14 F.2d 940; Wasmann v. City Nat. Bank, 6 Cir., 52 F.2d 705; Williams v. Green, 4 Cir., 23 F.2d 796. The case of Beck v. First Nat. Bank, 250 Ky. 764, 63 S. W.2d 937, is important but not determinative of present issues. That case was a suit upon a note given to the bank for the purchase of Banco stock but assigned by the bank to another bank. The Kentucky court was of the view that there was no proof of fraud by Thieman since he was ignorant of the true condition of the bank. It does not appear, however, that the fact that Thieman's ignorance was culpable was brought to the attention of the court or was considered by it. Finally, it is clear that the ratio decidendi in that case was that the First National Bank was a holder of the note in due course. It is agreed that the promotion of Banco was beyond the legitimate powers of the bank and ultra vires. Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694; D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, and Federal Deposit Ins. Corp. v. Vest, 6 Cir., 122 F.2d 765. These were all cases, however, where secret agreements to evade the provisions of the National Banking Act were sought to be enforced. Such agreements are illegal upon considerations of public policy. Here it is but claimed that Tway participated in a transaction which, through experience, he knew to be beyond the authority of the bank. But Tway de-

102

nied such knowledge, and the question was one for the jury.

■ It is the law that one who renews or makes payment on a note after knowledge of defenses that may be interposed to its collection, waives them, E. H. Taylor, Jr., & Sons v. First Nat. Bank, 6 Cir., 212 F. 898; Fitzpatrick v. Flannagan, 106 U.S. 648, 1 S.Ct. 369, 27 L.Ed. 211; and this extends to payments of interest. Rosenbloom v. Kaplan, 273 Mass. 411, 173 N.E. 522; Brummett v. McGowan, 165 Okl. 59, 24 P.2d 980. It is in reliance upon this rule that the receiver urges the fraud to have been waived by Tway when he made his several renewals of the note and his several payments of interest thereon. It is, however, familiar doctrine that waiver must be proved by clear and convincing evidence, and in respect to provisions in a contract, it has frequently been held that waiver must be supported by consideration, Reynolds v. Detroit Fidelity & Surety Co., 6 Cir., 19 F.2d 110; Burlew v. Fidelity & Casualty Co., 6 Cir., 64 F.2d 976. Tway denied knowledge of the fraud at times when he renewed his note or paid interest. The question, therefore, became one for the jury whose general verdict must be construed to include a finding that the fraud had not been waived. Doubt of bona fides in protestation of ignorance on the part of one who had read newspaper articles containing the comptroller's charges against officers of the bank, who in the past had been interested in and familiar with the published financial statements of the bank, and was presently an owner of Banco stock, even if entertained, constitutes no legal basis for setting aside a verdict supported by evidence.

■ We are unable to assent to the argument of the receiver that Tway is estopped from claiming fraud because, as one of the defendants in Anderson v. Abbott, supra, he had asserted that Banco was organized for a legitimate purpose. True, he has now changed his position, but so has the receiver. True it is also that the findings in Anderson v. Abbott, that Banco was organized for a legitimate purpose, have not been set aside. But these findings were not the basis for the decision of the Supreme Court as to stockholders' liability. If the case were retried I would not be concerned with the receiver's challenge to the report of the accountant in the Abbott case, without the accountant being called as a witness and subjected to cross-examina-

tion. The bank records are in the receiver's possession. If there are errors in White's summary there would doubtless be opportunity, upon retrial, to point them out.

An instruction permitting the jury to consider whether Thieman's statement that Chicago brokers had subscribed for 250,000 shares of Banco stock, was fraudulent, would probably be avoided upon retrial. In view of the conceded good faith of Thieman it was erroneous and clearly prejudicial. However Thieman may be charged with knowledge of the bank's affairs, the records of the Chicago transaction were not available to him. There was also room for difference of opinion as to whether the brokers had made an offer or merely taken an option. In any event Thieman's statement in that respect could be competent only if made with intent to deceive or with reckless disregard of the truth. From both he was absolved. The jury should not have been allowed to consider the statement as an element in the alleged fraud.

I come, then, to the final question in the case, and that is whether the receiver should have been granted a new trial on the ground of newly discovered evidence. After verdict it was discovered that Tway, some two months after purchasing the Banco shares, assigned them to the R. C. Tway Coal Sales Company, a corporation in which he was the controlling stockholder but in which there were other substantial interests. The receiver moved for a new trial upon the ground that if Tway sold the stock for a consideration equivalent to what he had paid, he suffered no damage and was precluded from availing himself of the defense of fraud. Tway, by affidavit, replied that he purchased the stock as the undisclosed agent for the Coal Company, and made the legal contention that as an undisclosed agent he alone could be sued on the note, and, when sued, could rely upon all defenses available to his principal. Agency Restatement, §§ 334, 738. The motion for new trial was denied on the ground that the new evidence did not substantially support the receiver's view that Tway bought and sold the stock for his own account.

■ Action granting or denying a motion for new trial for errors of fact will ordinarily not be reviewed in a federal court. Fairmont Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L. Ed. 439. A frequent reason is that the

granting or denying of such motion is a matter within the discretion of the court. Holmgren v. United States, 217 U.S. 509, 521, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann. Cas. 778. It is important to note, however, that Tway had testified he relied upon Thieman, not as his personal friend and business advisor, but as an officer of the bank; that he had no knowledge of the condition of the bank notwithstanding the comptroller's accusations against the directors, published in the press, and notwithstanding his own interest in its affairs by reason of his ownership of Banco stock; that he had sought and obtained set-offs on his note obligation of special deposits belonging to the corporation and members of his family as though they were his own, and had categorically asserted at the trial that he himself was the purchaser of the Banco shares.

These are all matters material to the charge of fraud and in denial of its waiver by renewal of the note, payment of interest thereon, and the acceptance of dividends upon Banco stock. They are supported solely by the assertions of Tway himself, and the jury's verdict may be explained only by its acceptance of Tway as a witness whose credibility and accuracy of memory could be relied upon. It now develops that the special account belonged not to Tway but to the R. C. Tway Coal Sales Company, and that Tway bought the shares for that company as its undisclosed agent, and not for himself. In response to the Receiver's petition for rehearing, based upon this newly discovered evidence, Tway, by affidavit, explains that he habitually referred to corporation activities as though they were his own because of his controlling interest in the corporation, and so there was neither intention to deceive nor actually any substantial deception in his evidence.

The District Judge accepted this explanation in the denial of the receiver's petition for new trial. He was not as familiar as we are, in view of the records and decisions in this court of which, in my judgment, we not only may but should take judicial notice, of the extent of Tway's transactions in securities and his previous experience in demonstration of the relationship between himself and his company in stock market operations. We learned, in United States v. R. C. Tway Coal Sales Co., 6 Cir., 75 F.2d 336, that Tway was a big operator—his monthly stock investments, carried in his own name, averaging $218,000 in 1922, $473,000 in 1923, and his overdrafts with the Sales Company for that purpose reaching $461,000 in 1930. In that case he found himself obliged, in order to recover a 25% penalty assessed against the Sales Company because of undistributed profits, to convince the District Judge and us that the Sales Company was organized for a business purpose and not merely to permit Tway to evade surtaxes. In the light of that history which I am unable to ignore, and which the court should not ignore, Tway's explanation of his concededly false representations to the receiver, and' his concededly untrue evidence in the trial below, is wholly incredible and might well be thought so by a jury. Since his claim of reliance upon fraudulent concealment, his ignorance of the infirmities in the bank's position notwithstanding published' criticisms of it which came to his notice prior to his renewals, payment of interest, and acceptance of dividends, rest entirely upon his own word a jury should be permitted to appraise the accuracy of his memory and the credibility of his evidence bearing upon the vital issues of the case in the light of the newly discovered facts. I think the court should have granted the motion for new trial.

As already indicated, my brothers are of the view that there were no substantial errors in the admission of evidence, and no abuse of discretion in the denial of the motion for new trial, wherefore,

Judgment below must be and it is affirmed.

McALLISTER, Circuit Judge.

Concurring as I do, with the result announced by Judge SIMONS, and with all his views as expressed in the opinion, except as therein noted, it appears proper to examine the claimed error of the court in refusing to grant a retrial on the ground of newly discovered evidence.

When the motion for new trial was filed, it was based upon the ground that newly discovered evidence revealed that Tway had purchased the Banco stock for his undisclosed principal, a corporation in which he was the principal stockholder; whereas, the defense on the trial had been predicated on the proposition that Tway was, individually, the owner of the stock; and certain of his testimony was quoted in an affidavit supporting the motion in which, in answer to an interrogation, he had stated that there was no doubt in his

mind that he owned the stock at the time of purchase. Moreover, in the brief filed by counsel for receiver, it was emphasized that the newly discovered evidence showed that the stock was purchased by Tway for his undisclosed principal. Counsel for Tway met this issue squarely and, before hearing of the motion, filed a brief to sustain the proposition that it would make no difference in the disposition of the case, whether Tway had purchased for himself or on behalf of his undisclosed principal, for the reason that an agent of an undisclosed principal was entitled to assert all defenses that his principal might assert.

This proposition appears to be unquestioned by appellant; but, on receiving appellee's brief on the motion, appellant immediately changed his theory and claimed that the newly discovered evidence showed that Tway had purchased the stock individually and had, thereafter, transferred it to the corporation in question. If this had been the fact, Tway would be without defense to the suit. The trial court held that, if it considered the facts relied upon by the receiver, sufficient to warrant submission of the question to a jury, with reason to believe that honest minds might differ on the matter, it would feel obliged to grant a new trial; but that, in its opinion, it was not reasonable to believe that the jury that tried the case, or that another jury, would find that the appellee had at any time purchased the stock, individually; and that all the circumstances negatived such a contention. In the trial court's opinion, it was stated that there was so little to support the receiver's contention and so much to support appellee's contention, that the court concluded it would be futile to retry the entire case merely to submit this fact question. Such a view seems reasonable.

Appellant now claims that, in view of the newly discovered evidence, he has the right to show that Tway referred to the stock as his stock and claimed it as his own, on the trial, contrary to his present assertion that he purchased for his undisclosed principal. Appellant, therefore, contends that he is entitled to a new trial on the ground of newly discovered evidence, which affects Tway's credibility as a witness. Tway's answer to the motion for new trial, included his affidavit in which he showed that he and his wife were the owners of the corporation in question, with the exception of certain shares of stock in the names of employees, and that he so completely managed the company that he cus-

tomarily and ordinarily referred to its transactions as his own, and to the stock in question, as his stock, or as having been bought by him; and, because the corporation was controlled and substantially owned by him, he had not considered that there was any difference between the actual fact and his testimony as given. It appears that he was the substantial owner of the company, and the evidence strongly tends to show he purchased the stock as agent for the corporation. It is true that when the bank closed and there was a balance of $80.82 in his account, which he desired to set off against the note given for the stock, he filed a sworn proof of claim, stating that the fund was his personal property and that no other person or corporation had any interest therein. The fact is that, although it stood in his name, it belonged to his undisclosed principal. This, however, would have made no difference with regard to the allowance of the claim, and if his statement were not made for his own profit or personal benefit, or with the object or effect of deceiving or prejudicing the receiver, it is difficult to see how it would be fraudulent. The claim would have been established whether Tway asserted it, individually, or as agent for his undisclosed principal. Appellant, in the proceedings for new trial, asked to take testimony in support of the motion, and, by affidavit of counsel, set forth that the facts in issue could not be determined without an examination of Tway and Clark, an officer of Tway's company. Thereupon, counsel for Tway consented to the taking of the deposition of these witnesses on two different occasions. Appellant's counsel then declined that which they had theretofore insisted upon, saying that they chose not to rely on such witnesses' self-serving statements, and, after demanding the right to cross-examine Tway, they refused the opportunity offered them. Such refusal to take advantage of the proffered cross-examination, could well convince the trial court that there was no merit in the contention of counsel for receiver. The most that could be said for the receiver's present contention is that the new evidence would affect Tway's credibility in a matter that, to me, seems incidental.

▮▮▮ Where newly discovered evidence contradicts a principal witness on important points, and attacks his credibility as a witness, the granting of a retrial upon newly discovered evidence of a contradictory and impeaching character, is a matter that rests in the sound discretion of the

court, and its determination will not be reversed without abuse of that discretion. Chambers v. Anderson, 6 Cir., 58 F.2d 151. Newly discovered evidence which tends merely to affect the weight and credibility of evidence does not constitute proper basis for a new trial. Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884. Under the circumstances of this case, it does not appear to me that denial of the motion for new trial on the ground of newly discovered evidence, that would only affect the credibility of T way, was an abuse of discretion on the part of the district court.

Judge HICKS joins in this opinion.